**No. 80SA77**

**Dexter E. Heninger v. Alan N. Charnes, as Director, Department of Revenue, Motor Vehicle Division, State of Colorado**

(613 P.2d 884)

Decided June 30, 1980.

Daniel Plattner, for plaintiff-appellant.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Mary J. Mullarkey, Solicitor General, Terre Lee Rushton, Assistant Attorney General, for defendant-appellee.

*En Banc.*

JUSTICE QUINN delivered the opinion of the Court.

The Department of Revenue (Department) revoked the 'driver's license of Dexter E. Heninger (Appellant), and the order of revocation was affirmed by the district court in a proceeding for judicial review under section 24-4-106, C.R.S. 1973. This appeal raises constitutional issues relating to the license-revocation provisions of sections 42-2-122(1)(i) and 42-2-203, C.R.S. 1973. We affirm the judgment of the district court.

The facts are not in dispute. Prior to the revocation of his driver's license, the appellant had accumulated an extensive record of alcohol-related traffic offenses. He was convicted of driving while under the influence of intoxicating liquor in 1970. On September 2, 1975, he sustained a conviction for driving on March 13, 1975, while his ability was impaired. On March 11, 1976, he sustained another conviction for driving under the influence on October 3, 1975. Thereafter, on June 8, 1977, he was again convicted for driving on January 2, 1976, while under the influence. After having been duly served with notice, appellant appeared with counsel at a hearing before the Department on September 3, 1977, and admitted the prior convictions. Two orders of revocation were entered by the Department. The first order revoked the appellant's operator's license for a period of at least two years based on his three prior convictions for operating a motor vehicle while under the influence. Section 42-2-122(1)(i), C.R.S. 1973.[1] The second order of revocation was for a period of at least five years

---

[1] Section 42-2-122(1)(i) provides:
"(1) The department shall forthwith revoke the license of any driver . . . upon receiving a record showing that such driver has:
"(i) Been convicted three times of driving a motor vehicle while under the influence of intoxicating liquor or any drug which made him incapable of safely operating a motor vehicle. The license of any driver shall be revoked for an indefinite period and shall only be reissued upon application and proof to a court of competent jurisdiction, upon failure of the department to take action, that said driver is competent to drive, and an order shall issue from said court to the department to so reissue said license. In no event shall such application be made in less than two years."

and was based on the appellant's three convictions of driving while under the influence or while impaired within a seven-year period. Section 42-2-203, C.R.S. 1973.[2] Appellant claims that the mandatory revocation provisions of sections 42-2-122 (1)(i) and 42-2-203, C.R.S. 1973, violate equal protection of the laws, due process of law, and the prohibition against cruel and unusual punishment under the United States and Colorado Constitutions.

## I. EQUAL PROTECTION OF THE LAWS

The appellant raises several claims with respect to equal protection of the laws under the Fourteenth Amendment to the United States Constitution and Article II, Section 25 of the Colorado Constitution.[3] Initially, he claims that the revocation procedures authorized by sections 42-2-122(1)(i) and 42-2-203, C.R.S. 1973, for alcohol-related driving offenses implicate fundamental rights — the right to drive an automobile and the right to travel interstate. Appellant contends that since a fundamental right is affected by the statutory revocation procedures, the proper standard for equal protection analysis is that of strict judicial scrutiny. Under this standard the state has the burden of establishing that the statutory revocation scheme is *necessarily* related to a *compelling* governmental interest. *E.g., San Antonio School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Bernzen v. Boulder,* 186 Colo. 81, 525 P.2d 416 (1974); *Jarmel v. Putnam,* 179 Colo. 215, 499 P.2d 603 (1972). Appellant maintains that the statutory scheme cannot satisfy this stringent constitutional standard. Alternatively, appellant argues that even if a fundamental right is not involved, the statutory revocation procedures, by discriminating against alcoholics and problem drinkers, fail to satisfy

---

[2] Section 42-2-203 provides:
"The department has the authority to revoke the license of any person whose record brings him within the definition of an habitual offender in section 42-2-202 . . . ."
Section 42-2-202(2)(a)(I) defines an habitual offender as one who, within a seven-year period or portion thereof, has accumulated three or more convictions for operating a motor vehicle while under the influence of intoxicating liquor or while his ability is impaired in violation of section 42-4-1202, C.R.S. 1973 (1979 Supp.). The convictions must be for separate and distinct offenses arising out of separate acts.

[3] Although the Colorado Constitution does not contain an explicit equal protection clause, equal treatment under the laws is a right constitutionally afforded Colorado citizens and is included within the due process clause of Article II, Section 25, of the Colorado Constitution. *See Vanderhoff v. People,* 152 Colo. 147, 380 P.2d 903 (1963); *Trueblood v. Tinsley,* 148 Colo. 503, 366 P.2d 655 (1961); *People v. Max,* 70 Colo. 100, 198 P. 150 (1921).

even the rational relationship test of equal protection analysis. Under this latter standard a statutory classification will be upheld if it has a rational basis and is reasonably related to a legitimate governmental purpose.[4] *E.g., San Antonio School District v. Rodriguez, supra; Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972); *Mosgrove v. Town of Federal Heights,* 190 Colo. 1, 543 P.2d 715 (1975); *Gates Rubber Co. v. South Suburban Metro. Recreation Dist.,* 183 Colo. 222, 516 P.2d 436 (1973).

With respect to the first prong of appellant's strict scrutiny argument — the right to drive as a fundamental right — we have held in several cases that the right to drive an automobile upon the public highways of this state does not enjoy the selective status of fundamentality. *Fuhrer v. Dept. of Motor Vehicles,* 197 Colo. 325, 592 P.2d 402 (1979); *People v. Brown,* 174 Colo. 513, 485 P.2d 500 (1971); *Love v. Bell,* 171 Colo. 27, 465 P.2d 118 (1970); *People v. Nothaus,* 147 Colo. 210, 363 P.2d 180 (1961). The clear import of these cases is that the issuance of a driver's license does not confer upon the licensee a right that is independently entitled to protection against any and all governmental interference or restriction.

The second prong of appellant's claim for strict scrutiny is that the revocation of his license implicates his right to travel interstate. While the right to travel interstate is without question a fundamental right under the United States Constitution, *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), the critical inquiry in this case is whether the revocation of appellants' license burdens this fundamental right. We hold that it does not.

Any incidental disadvantage in appellant's travel options is directly attributable to his voluntary and repeated violations of the traffic laws. More importantly, such incidental disadvantage is of no constitutional significance to his basic right to travel interstate. The revocation of appellant's license to drive in no manner impairs his freedom to move from state to state. He has been neither locked into nor fenced out of the state of Colorado and is as free to come and go at will as he was before the revocation.

We also find no merit in appellant's remaining equal protection argument: the statutory revocation procedures discriminate against

---

[4] The appellant makes no claim that the statutory revocation procedures render alcoholics and problem drinkers a "suspect class" for equal protection purposes. When a "suspect class" is established, the strict judicial scrutiny test applies. *E.g., San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). Classifications based on race, nationality or alienage are the more obvious examples of "suspect class" categories. *See Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Loving v. Virginia, supra.*

alcoholics and problem drinkers and bear no reasonable relationship to a legitimate governmental interest. The provisions of sections 42-2-122(1)(i) and 42-2-203, C.R.S. 1973, do not create a statutory classification of alcoholics and problem drinkers with respect to traffic offenses. The traffic laws and the revocation procedures are aimed at *all* drivers who operate a motor vehicle while under the influence of alcohol or while their ability is impaired, regardless of their status as alcoholics or problem drinkers. *See* sections 42-4-1202(1)(a) and (b), 42-2-122(1)(g) and (i), 42-2-202(2)(a)(I), C.R.S. 1973. *All* persons, in other words, are prohibited from operating a motor vehicle while intoxicated or while their ability is impaired, and all persons are equally subject to revocation of their licenses upon requisite proof that the statutory bases have been satisfied.

To the extent that one might consider as a classification the categorization of alcohol-related driving offenses, sections 42-2-122(1)(g) and (i), 42-2-202(2)(a)(I), C.R.S. 1973, such classification is reasonably related to the expressed governmental interest of providing "maximum safety for all persons who travel or otherwise use the public highway . . . ." Section 42-2-201(1)(a), C.R.S. 1973; *Fuhrer v. Dept. of Motor Vehicles, supra.* The alcoholic or problem drinker, however, suffers no more restrictions on his driver's license by reason of this classification than does any other licensee. Accordingly, the appellant's equal protection arguments are rejected.

## II. DUE PROCESS OF LAW

The appellant's due process argument is directed only against section 42-2-203, C.R.S. 1973, which relates to the Department's authority to revoke the driver's license of a habitual offender. Section 42-2-202(2)(a)(I), C.R.S. 1973, defines a habitual offender as any person who has accumulated during a seven-year period three or more separate and distinct convictions arising out of separate acts for operating a motor vehicle while under the influence of intoxicating liquor or while one's ability is impaired.

The appellant argues that section 42-2-203, C.R.S. 1973, as applied to him, violates due process of law because (1) it bears no reasonable relationship to a legitimate governmental purpose, and (2) it fails to provide for a probationary license upon evidence of mitigating circumstances. The appellant's initial claim of unconstitutional application is based on his testimony at the revocation hearing that he was then a reformed alcoholic and had been on monitored Antabuse since January 1976.

The doctrine of unconstitutional application requires a demonstration that the application of a statute to the appellant under the circumstances of this case would directly interfere with his rights arising under the federal or state constitution. *E.g., Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Cramp v. Board of Public Institutions,* 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961); *United States v. Raines,* 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960).

While one's interest in maintaining a driver's license is an interest that requires a due process hearing before termination, *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), the right to drive an automobile upon the public highways is not absolute. Repeatedly, we have recognized the legislature's prerogative to subject a licensed driver to reasonable governmental restrictions in the interest of public health, safety and welfare. *E.g., Fuhrer v. Dept. of Motor Vehicles, supra; People v. Brown, supra; Love v. Bell, supra; People v. Nothaus, supra.*

 The explicit legislative policy underlying the enactment of the revocation provisions for habitual traffic offenders is "to provide maximum safety for all persons who travel or otherwise use the public highways of this state," and "to deny the privilege of operating motor vehicles . . . to persons who by their conduct and record have demonstrated their indifference to the safety and welfare of others and their disrespect for the laws . . . ." Section 42-2-201(1)(a) and (b), C.R.S. 1973. In keeping with this policy section 42-2-205, C.R.S. 1973 provides:

"(1) No license to operate motor vehicles in this state shall be issued to an habitual offender, nor shall an habitual offender operate a motor vehicle in this state:

"(a) For a period of five years from the date of the order of the department finding such person to be an habitual offender; and

"(b) Until such time as financial responsibility requirements are met."

 The appellant's reformation, commendable though it be, is not a constitutionally significant fact that serves to exempt his prior convictions from the operation of the habitual traffic offender law. Upon satisfactory proof that the appellant had incurred the convictions necessary for habitual offender status, the Department properly revoked his driver's license. *E.g., Fuhrer v. Dept. of Motor Vehicles, supra.*

The second basis for appellant's due process claim is that he was entitled to, and deprived of, a hearing for a probationary license. He concedes that there is no statutory basis for such a hearing in the case of a habitual offender, but claims entitlement on grounds of fundamental fairness. We are not persuaded that appellant has been denied due process of law.

 Whereas the legislature has chosen to afford a certain class of traffic offenders manifesting a history of alcohol abuse an opportunity to obtain a probationary license under certain conditions,[5] the legislature

---

[5] Section 42-2-122(4), C.R.S. 1973 (1979 Supp.) provides:
"Any individual who has had his license revoked pursuant to paragraph (g) or (i) of subsection (1) of this section shall be eligible for a hearing for a probationary license upon the satisfactory completion of a course of alcohol treatment in a program approved by the division of highway safety. Such a probationary license shall contain any restrictions the department deems reasonable and necessary, be subject to cancellation for violation of any such restrictions, and be issued for the remaining period of suspension. No individual shall be eligible for more than one hearing in any calendar year under this subsection (4)."

likewise has exercised its prerogative in expressly prohibiting the issuance of any license to a habitual traffic offender. Section 42-2-205, C.R.S. 1973. Such legislative line-drawing is not unreasonable and does not erode the constitutional interests of appellant. "When one has consistently demonstrated a total disregard for his responsibilities as a driver and for the safety of other drivers and pedestrians, he cannot complain when he loses his conditional right to use the highways of the state." *Campbell v. Colorado,* 176 Colo. 202, 211, 491 P.2d 1385, 1390 (1971). Under the circumstances present here, the revocation of the appellant's license and the revocation proceedings in connection therewith comported with due process of law under the Fourteenth Amendment to the United States Constitution and Article II, Section 25, of the Colorado Constitution.[6]

### III. CRUEL AND UNUSUAL PUNISHMENT

Appellant also argues that the revocation of his driver's license constitutes cruel and unusual punishment in violation of the Fourteenth Amendment to the United States Constitution and Article II, Section 20, of the Colorado Constitution.

We addressed and rejected a similar argument in *Campbell v. Colorado, supra,* observing that "[i]ndefinite revocation here is a remedial action designed to assure the general public safety in the use of its highways." 176 Colo. at 211, 491 P.2d at 1390. *Campbell* also held that a revocation hearing is a civil, rather than a criminal, proceeding. Independent of the constitutional relevancy attaching to the *civil* nature of these proceedings for purposes of the prohibition against cruel and unusual punishment, *see Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), the revocation of the appellant's license under the circumstances present here cannot be characterized as grossly excessive, nor was it arbitrarily imposed in a severe or cruel manner. *See e.g., Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977); *Trop v. Dulles,* 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958).

The judgment is affirmed.

JUSTICE DUBOFSKY does not participate.

---

[6] The appellant in his brief has raised the issue of his right to a hearing for a probationary license under the rubric of due process. Both the brief and the record before the district court do contain an occasional allusion to procedural equality, perhaps thereby raising an equal protection argument. We find nothing in the statutory revocation procedures applied to appellant that violates his equal protection interests under the federal and state constitutions.