Peter Shull SMITH, Plaintiff-Appellant,

v.

Alan CHARNES, Executive Director Department of Revenue, State of Colorado, and Motor Vehicle Division, State of Colorado, Defendant-Appellee.

No. 80SA535.

Supreme Court of Colorado, En Banc.

Aug. 23, 1982.

Amos Rogers Little, III, Denver, for plaintiff-appellant.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Mary C. Snow, Asst. Atty. Gen., Denver, for defendant-appellee.

QUINN, Justice.

The Motor Vehicle Division of the Department of Revenue (Department) suspended the driver's license of Peter Shull Smith because he accumulated twelve points within a twelve month period, and the suspension was upheld by the district court. Smith argues that the statute authorizing the suspension, section 42–2–123(1)(a), C.R.S.1973 (1981 Supp.), violates equal protection of the laws in that it allows chauffeurs to accumulate more points

prior to suspension than regular licensees.[1] We find that the statutory classification between chauffeurs and regular licensees[2] is a rational one and is reasonably related to a legitimate governmental interest. We therefore affirm the judgment.

I.

Between October 21, 1978, and October 3, 1979, Smith was convicted of several four point traffic violations: speeding,[3] careless driving,[4] and failure to observe a stop sign.[5] Because these convictions resulted in a total of twelve points,[6] the number that exposes a regular driver to a license suspension, the Department ordered a suspension hearing. Smith attended the hearing with his attorney and did not dispute the accuracy of his driving record. The hearing officer suspended Smith's license for six months but granted him a probationary license conditioned only upon the maintenance of a clean driving record. Smith sought judicial review of the suspension order in the district court, which upheld the suspension and rejected Smith's equal protection claim. This appeal followed.

Section 42–2–123(1)(a), C.R.S.1973 (1981 Supp.), provides, in pertinent part, as follows:

> The department has the authority to suspend the license of any driver who, in

accordance with the schedule of points set forth in this section, has been convicted of traffic violations resulting in the accumulation of twelve points within any twelve consecutive months ... except that the accumulation of points causing the subjection to suspension of the license of a chauffeur who, in the course of his employment, has as his principal duties the operation of a motor vehicle shall be sixteen points in one year ... if all such points are accumulated while said chauffeur is in the course of his employment. Any provision of this section to the contrary notwithstanding, the license of a chauffeur who is convicted of the offense of driving while under the influence of drugs or alcohol or leaving the scene of an accident shall be suspended in the same manner as if the offense occurred outside the course of employment.

Smith challenges the statute under both the United States and Colorado Constitutions on the ground that it violates equal protection of the laws, *U.S.Const.* Amend. XIV, *Colo.Const.* Art. II, Sec. 25,[7] by permitting persons holding a chauffeur's license to accumulate four more points than regular drivers within the same one year period prior to a license suspension. He argues that he should be given the benefit of the increased number of points permitted chauffeurs.[8]

1. Because of the constitutional challenge to section 42–2–123(1)(a), C.R.S.1973 (1981 Supp.), the appeal was filed with this court. *See* section 13–4–102(1)(b), C.R.S.1973.

2. By "regular licensee" or "regular driver" we mean a licensee who is neither a professional driver, a minor, nor a chauffeur within the meaning of section 42–2–123(1)(a), C.R.S.1973 (1981 Supp.).

3. Section 42–4–1001, C.R.S.1973 (1981 Supp.).

4. Section 42–4–1204, C.R.S.1973 (1981 Supp.).

5. Section 42–4–603, C.R.S.1973 (1981 Supp.).

6. Section 42–2–123(5)(e), (f)(II) and (1), C.R.S. 1973.

7. The right to equal protection of the laws finds support in the due process clause of the Colorado Constitution, Art. II, Sec. 25. *E.g., Heninger v. Charnes*, Colo., 613 P.2d 884 (1980); *Vander-*

*hoof v. People*, 152 Colo. 147, 380 P.2d 903 (1963); *People v. Max*, 70 Colo. 100, 198 P. 150 (1921).

8. The department argues that Smith lacks standing to raise an equal protection claim because he could not benefit from a favorable decision. According to the department, if this court determined the statute to be unconstitutional, the remedy would be to apply the regular twelve point suspension standard to chauffeurs as well, which would afford Smith no relief. Because we uphold the statute, we need not decide what the remedy would be if the statute was found invalid. We note in passing, however, that were the statute found to violate equal protection, it is at least arguable that alternative remedies might be available which would inure to the benefit of Smith, such as to allow nonchauffeurs to accumulate sixteen points prior to suspension or to strike the suspension section in its entirety. It has been noted that an equal protection violation per-

## II.

In the absence of a fundamental right or a suspect classification, neither of which exists here, *e.g., Van Gerpen v. Peterson*, Colo., 620 P.2d 714 (1980); *Heninger v. Charnes*, Colo., 613 P.2d 884 (1980), the applicable standard of constitutional review for an equal protection claim is whether the statutory classification has some rational basis in fact and is reasonably related to a legitimate governmental interest. *E.g., Heninger v. Charnes, supra; Mosgrove v. Town of Federal Heights*, 190 Colo. 1, 543 P.2d 715 (1975); *Lee v. People*, 170 Colo. 268, 460 P.2d 796 (1969). There is no question that the legitimate governmental interest underlying the statutory scheme for suspension of drivers' licenses is the enhancement of safety upon the public highways of this state. *E.g., Van Gerpen v. Peterson, supra; Heninger v. Charnes, supra; Fuhrer v. Dept. of Motor Vehicles*, 197 Colo. 325, 592 P.2d 402 (1979). Smith does not question this governmental interest. Instead, he claims that the statutory differential in point allocation between chauffeurs and other drivers lacks sufficient rationality to serve the government's interest in highway safety. We find his claim lacking in merit.

Smith makes several assertions in support of his argument that the statutory difference in point allocation between chauffeurs and regular licensees lacks a rational basis in fact. He states that the approval of the statutory classification in this case would permit the legislature to grant special privileges to other professions and occupations which have a greater exposure to law violations than the average person. A sufficient answer to this argument is that the purpose of the license suspension law is not to pro-

tect chauffeur licensees from suspension of their driving privileges because of what might be considered a greater exposure to traffic citations, but to regulate their driving privilege in accordance with the government's interest in public safety. This overriding purpose is illustrated in several ways. For example, the sixteen point allocation to chauffeurs applies only when all points are accumulated in the course of employment. Section 42–2–123(1)(a), C.R.S.1973 (1981 Supp.). Also, the statutory scheme specifically provides that a chauffeur is to be treated as any other driver in the case of certain traffic violations, such as driving under the influence of drugs or alcohol or leaving the scene of an accident. *Id.*

Citing *Glenn v. Commissioner of the District of Columbia*, 146 A.2d 575 (Mun.Ct. App.D.C.1958), and *Barney v. Cox*, 588 P.2d 696 (Utah 1978), Smith next asserts that other jurisdictions have rejected challenges by special licensees, such as taxi drivers and truckers, against point systems which did not grant them a greater point allocation than that given to the ordinary driver. We find these cases inapposite to the issue here. That an alternative legislative scheme, such as those employed in Utah or the District of Columbia, might have withstood constitutional challenge is not to say that the present Colorado system is violative of equal protection of the laws. The legislature constantly faces the task of choosing from a number of competing alternatives, each of which may have rational policy support. As long as there is an actual difference in fact to support several possible classifications, the selection of one alternative over another is a matter of legislative pre-

mits a court to toss "the equal protection coin" either way. L. Tribe, *American Constitutional Law* § 15–2, at 85, n. 31 (Supp.1979). *See, e.g., R. McG. v. J. W.*, Colo., 615 P.2d 666 (1980) (where statutory scheme allows natural mother to seek a judicial declaration of paternity in natural father in connection with child born to natural mother during her marriage to another, equal protection requires a claiming natural father to be accorded standing to file and proceed with claim for judicial declaration of paternity in himself with respect to child born to natural mother during her marriage to anoth-

er); *People v. Bramlett*, 194 Colo. 205, 573 P.2d 94 (1977) (equal protection violated where conduct and intent proscribed by first degree assault statute and less severe offense of criminally negligent homicide not sufficiently distinguishable, and proper remedy is to sentence defendant to no greater penalty than applicable to criminally negligent homicide upon his conviction for first degree assault, if jury determines that defendant acted with good faith but unreasonable belief in self-defense in assaulting another).

rogative. *See, e.g., Lopez v. Motor Vehicle Division*, 189 Colo. 133, 538 P.2d 446 (1975); *Consumers' League of Colorado v. Colorado and S. R. Co.*, 53 Colo. 54, 125 P. 577 (1912).

Last, Smith cites the Colorado Legislative Council Research Publication No. 91, which was published in 1964 and recommended that the point allocation for persons holding a chauffeur's license should correspond to the system applicable to regular licensees. His reliance upon this document for his equal protection claim is misplaced. In pursuing its objective the legislature is not required to follow the recommendation of the Research Council, nor does it act arbitrarily merely because it exercises independent judgment. It is not our function to evaluate the wisdom of a legislative decision to follow or reject the Research Council's recommendation. Rather, it is our duty to uphold the statutory classification as long as there is a reasonable basis to support it. *E.g., Johnson v. Division of Employment*, 191 Colo. 38, 550 P.2d 334 (1976); *Dunbar v. Hoffman*, 171 Colo. 481, 468 P.2d 742 (1970).

In our view the statutory distinction between chauffeurs and regular licensees is not devoid of a rational justification. A chauffeur is defined as a person "who is employed for the principal purpose of operating a motor vehicle and every person who drives a motor vehicle while in use as a public or common carrier of persons or property." Section 42–1–102(11), C.R.S. 1973. It may reasonably be assumed that chauffeurs ordinarily will spend a greater amount of time driving over the state's highways than the regular licensee. With this in mind, the legislative decision to accord chauffeurs as a class a higher point allocation than that given to the regular driver cannot be viewed as so lacking a reasonable basis in fact as to render the statutory classification constitutionally flawed.

### III.

It cannot be disputed in this case that the statutory classification is reasonably related to the governmental interest in public safe-

ty. In point of fact, the statutory classification does not grant chauffeurs unlimited immunity from a license suspension. On the contrary, the difference in statutory treatment between a regular licensee, such as Smith, and one holding a chauffeur's license is that the latter is permitted to accumulate four more points during a twelve month period prior to the suspension of his chauffeur's license. Once the statutory limit for a chauffeur-licensee is reached, however, the chauffeur's driving privilege is subject to suspension just as the license of any other driver. We cannot say that the statutory classification challenged here is not reasonably related to the legitimate governmental interest in protecting the public from drivers whose conduct and record have demonstrated their indifference to the safety and welfare of others, whether those persons hold a chauffeur's license or a regular driver's license.

### IV.

We conclude that the legislative classification which permits the department to suspend the driving privilege of a person holding a chauffeur's license upon the accumulation of sixteen points within one year, while the driving privilege of a regular licensee may be suspended upon the accumulation of twelve points in the same period, does not violate equal protection of the laws. The statutory classification has a rational basis in fact and is reasonably related to the legitimate governmental interest in preserving public safety upon the highways of this state. We therefore affirm the judgment.