**James F. ALLEN, Plaintiff-Appellant,**
v.

**Alan CHARNES, Executive Director of the Department of Revenue, Motor Vehicle Division, State of Colorado, Defendant-Appellee.**

**No. 82SA315.**

Supreme Court of Colorado,
En Banc.

Jan. 9, 1984.

4. Sections 16–13–101 to –103, C.R.S.1973 (1978    Repl.Vol. 8).

Davis & Fritsche, William J. Fritsche, Mort Davis, Aurora, for plaintiff-appellant.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Larry A. Williams, Asst. Atty. Gen., Denver, for defendant-appellee.

ROVIRA, Justice.

James Allen appeals from a judgment of the district court affirming an order of the Department of Revenue (Department). The order in question extended the denial of Allen's driver's license for one year under section 42–2–130(3), C.R.S.1973. We are satisfied that section 42–2–130(3) permits the extension of denials and is constitutional.[1] We therefore affirm the judgment of the district court.

### I.

Allen's driving record reveals a series of suspensions, revocations, and denials of his driver's license dating back to 1975. He has been cited twice under the implied consent statute[2] and been convicted of careless driving, driving while impaired, driving under the influence, and driving while license suspended. On September 5, 1978, the Department issued an order of denial which was to be effective until June 8, 1979. Seven weeks later, on October 25, 1978, Allen was stopped outside Breckenridge, Colorado, because of a defective taillight. He produced a Kansas driver's license and, although aware that his Colorado license had been denied, he told the police officer that he was not driving under a suspended or denied license. A check of his driving record indicated otherwise, and Allen was arrested and charged with driving while his license was under denial. On May 30, 1979, he pled guilty to a charge of "driving while license suspended," and, as a result, the Department extended the previous denial of his license to May 29, 1980. Allen then requested a hearing before the Department.

On October 23, 1979, a Department hearing officer upheld the extension of the order of denial. The next day, Allen filed a

---

1. Because the constitutionality of a statute is at issue, this case was transferred from the Colorado Court of Appeals to this court pursuant to section 13–4–110, C.R.S.1973.

2. Section 42–4–1202, C.R.S.1973 (1973 and 1982 Supp.).

complaint in Adams County District Court, alleging "irreparable injury" and seeking review of the hearing officer's decision. The district court issued a stay against enforcement of the extension on October 24. It then conducted a hearing and decided that the extension was justified. In response to Allen's argument that the Department's action was not authorized under section 42–2–130(3),[3] the court stated:

> "The interest of the statute is clear—that those who drive in violation of an order depriving them of driving privileges should be punished by extending the period of deprivation. The case of *Reyher v. [State]*, 39 Colo.App. 510, 571 P.2d 729 (1977) held that the habitual offender statutes [4] included the offense of driving while under denial as well as those of driving under suspension and under revocation, even though only the latter two offenses were specifically mentioned in the statute. The same reasoning should be applied here. . . . There is no logic in treating differently those who possess a driver's license and have the same suspended because of one or more offenses and those who do not have a license and are denied the privilege of having one because of one or more offenses."

The court decided, however, that further findings on several other issues [5] were required. It therefore remanded Allen's case to the hearing officer.

On remand, the hearing officer again upheld the extension of the order of denial. Allen then took a second appeal to the district court, which concluded once again that the decision of the hearing officer was correct. The court ruled that "the denial . . . is to be handled in the same category as a suspension [or] revocation, even though it was not specifically mentioned [in] a specific statute."

On appeal, Allen argues that the Department has no authority to extend the period of denial of his driver's license under section 42–2–130(3). If, however, the extension was authorized, he claims that his right to equal protection of the laws was violated because, under the statute, the extension was to begin "after the date of the conviction of said offense." Finally, Allen contends that he was driving under an emergency as defined in Department Regulation 2–130.3(F), and that he was entitled to a probationary license under Regulation 2–123.11(B). We disagree with each of these arguments.

## II.

### A.

Section 42–2–130(1)(a), C.R.S.1973, imposes criminal penalties on drivers who are convicted of driving while their licenses are denied, suspended, or revoked. When Allen entered his guilty plea in May 1979, it provided:

> "Any person who drives a motor vehicle upon any highway of this state at a time when his driver's . . . license or driving privilege, either as a resident or a nonresident, is *denied, suspended, or revoked* is guilty of a misdemeanor and, upon conviction thereof, shall be punished by imprisonment in the county jail for not less than five days nor more than six months, and, in the discretion of the court, a fine of not less than fifty dollars nor more than five hundred dollars may be imposed." [6]

Section 42–2–130(3) authorizes the Department to extend the period of suspension or revocation whenever drivers whose licenses have been suspended or revoked commit additional traffic offenses. When

---

**3.** *See infra* Part II(A).

**4.** Section 42–2–202(2)(a)(III), C.R.S.1973.

**5.** The district court ordered additional findings on whether Allen was driving because of an emergency and whether Allen should have been granted a probationary license.

**6.** Section 42–2–130(1)(a), C.R.S.1973 (1979 Supp.) (emphasis added). This statute was amended in 1982. *See* An Act Concerning Drug- or Alcohol-Related Traffic Offenses, Colo. Sess.Laws 1982, ch. 166, 42–2–130(1)(a) at 606–07 (codified at section 42–2–130(1)(a), C.R.S.1973 (1982 Supp.)).

the Department extended the denial of Allen's license, this statute provided:

"The department, upon receiving a record of conviction or accident report of any person for an offense committed while operating a motor vehicle, shall immediately examine its files to determine if the license or operating privilege of such person has been *suspended or revoked.* If it appears that said offense was committed while the license or operating privilege of such person was *suspended,* the department may renew or extend the period of suspension for an additional period, not to exceed one year, after the date of the conviction of said offense. If it appears that said offense was committed while the license or operating privilege of such person was *revoked,* the department shall not issue a new license for an additional period of one year after the date such person would otherwise have been entitled to apply for a new license ...." (Emphasis added.)

Before the district court finally affirmed the extension in 1981, however, the legislature amended section 42–2–130(3) by combining the second and third sentences and changing the commencement date for extending a suspension. The amended statute now provides:

"The department, upon receiving a record of conviction or accident report of any person for an offense committed while operating a motor vehicle, shall immediately examine its files to determine if the license or operating privilege of such person has been *suspended or revoked.* If it appears that said offense was committed while the license or operating privilege of such person was *revoked or suspended,* the department shall not issue a new license or grant any driving privileges for an additional period of one year after the date such person would otherwise have

been entitled to apply for a new license or for reinstatement of a suspended license ...." [7] (Emphasis added.)

The primary issue in this case is whether the Department has the statutory authority to extend the denial of Allen's license. Allen concedes that the terms "denied," "suspended," and "revoked" are used interchangeably in section 42–2–130(1)(a) to identify the prohibited conduct. He argues, however, that section 42–2–130(3), which governs the extension of suspensions and revocations, makes no provision for the extension of a denial. Since Allen was technically under denial and not suspension on October 25, 1978, he concludes that the Department was "without statutory authority" when it extended the denial of his license to May 29, 1980.

■ We recognize that section 42–2–130(3) does not expressly mention the extension of denials. However, we must presume that the legislature intended a just and reasonable result when it enacted this statute, a result which favors the public interest over any private interest. *See* section 2–4–201, C.R.S.1973 (1980 Repl.Vol. 1B) (intentions in the enactment of statutes). We must also keep in mind the object to be attained by section 42–2–130(3) and the consequences of construing the statute to exclude the extension of denials. *See* section 2–4–203, C.R.S.1973 (1980 Repl.Vol. 1B) (aids in construction). In our view, subsection (3) must be read and considered in the context of section 42–2–130 as a whole.[8] *See Marquez v. Prudential Property and Casualty Insurance Co.,* 620 P.2d 29 (Colo. 1980); *Travelers Indemnity Co. v. Barnes,* 191 Colo. 278, 552 P.2d 300 (1976); *Humana, Inc. v. Board of Adjustment,* 189 Colo. 79, 537 P.2d 741 (1975). Since the legislature listed driving under denial together with

7. *See* An Act Concerning the Operation of Motor Vehicles, Colo.Sess.Laws 1981, ch. 488, 42–2–130(3) at 1934 (codified at section 42–2–130(3), C.R.S.1973 (1982 Supp.)).

8. It should also be read and considered in the context of other relevant provisions of article 2 of the Uniform Motor Vehicle Law. *See, e.g.,*

sections 42–2–101 (licenses for drivers), 42–2–103 (licenses issued—denied), 42–2–116 (renewal of license), 42–2–119 (department may cancel license), 42–2–123 (authority to suspend license—to deny license), 42–2–124 (period of suspension or revocation), 42–2–127 (right to appeal), C.R.S.1973 (1973 and 1982 Supp.).

driving under suspension or revocation in section 42–2–130(1)(a), it is reasonable to infer that the power to extend suspensions or revocations in section 42–2–130(3) would also include the power to extend denials. Otherwise, the Department would be prevented from imposing administrative sanctions against drivers who commit traffic offenses while orders of denial are in effect.

The 1981 amended version of section 42–2–130(3) and Allen's own actions lend further support to our conclusion. The legislature has now eliminated the distinction between extending suspensions and postponing the entitlement date for revoked licenses that existed in the 1979 version of section 42–2–130(3). Instead of two sentences, the amended statute now discusses suspensions and revocations interchangeably, as does section 42–2–130(1)(a). In addition, we note that Allen himself considered driving under denial and driving under suspension to be, for all practical purposes, "interchangeable" offenses on May 30, 1979. Although technically under denial at the time, he pled guilty to "driving while license suspended." For these reasons, we conclude that the Department had the statutory authority to extend the denial of Allen's license under section 42–2–130(3).

Our analysis is similar to that undertaken by the court of appeals in *Reyher v. State,* 39 Colo.App. 510, 571 P.2d 729 (1977) (*cert. denied* 1977). In that case, the court of appeals determined that section 42–2–202(2)(a)(III), C.R.S.1973, which lists "[o]perating a motor vehicle while his license . . . has been suspended or revoked,

in violation of section 42–2–130" as an applicable offense under the habitual traffic offender statute, included by implication all violations contained in section 42–2–130, "including driving while under denial." The court stated:

"[W]e find it unreasonable to assume that the legislature intended that those who drive without a license would be exempt from the sanctions imposed under the habitual offender law, while those who do acquire a license which is suspended or revoked must bear the burden of the law for committing the same offenses."

*Id.* at 512, 571 P.2d at 731. The district court in this case was persuaded by the analysis in *Reyher.*[9] While the express reference in section 42–2–202(2)(a)(III) to section 42–2–130 makes *Reyher* an easier case, we conclude nevertheless that *Reyher* supports the inference we have drawn concerning the extension of denials under section 42–2–130(3).[10]

### B.

We likewise reject Allen's constitutional argument that his right to equal protection of the laws, *see U.S. Const.* amend. XIV; *Colo. Const.* art. II, sec. 25,[11] was violated because, under the statute, section 42–2–130(3), the extension was to begin "after the date of the conviction of said offense." By not pleading guilty until May 30, 1979, seven months after his arrest, Allen claims that he must suffer a longer extension period than drivers who plead guilty right away.[12] What Allen overlooks is that he purposely decided to contest the

9. *See supra* text accompanying notes 3–5.

10. *See also People v. Lessar,* 629 P.2d 577 (Colo.1981) (although order of denial had officially expired, driver was still under denial and subject to prosecution under section 42–2–130(1)(a) until he obtained a new driver's license); *Zaba v. Motor Vehicle Division,* 183 Colo. 335, 516 P.2d 634 (1973) (although hearing was labeled "suspension hearing," order of denial was appropriate, since the driver had never renewed his license and denial is "a supplement to suspension").

11. Equal protection of the laws is a right constitutionally afforded Colorado citizens and is included within the due process clause of *Colo.*

*Const.* art. II, sec. 25. *See People v. Dunoyair,* 660 P.2d 890, 893 n. 3 (Colo.1983); *Heninger v. Charnes,* 200 Colo. 194, 197 n. 3, 613 P.2d 884, 886 n. 3 (1980).

12. Allen suggests that any extension should run from the date of the offense, rather than from the date of conviction. Under this proposal, however, a driver in Allen's position would be able to circumvent the period of extension by requesting a hearing and then appealing the decision. If the appeal process took more than one year to complete, the one-year extension would become a moot issue.

October 25, 1978, charge of driving under denial. The fact that seven months passed before he was "convicted" had nothing to do with the statute or any statutory classification scheme. Furthermore, a stay against enforcement of the extension has been in effect since October 24, 1979, one day after the hearing officer originally upheld the extension. Allen is hardly in a position to complain about the hardships of an extension which is not yet final and has not yet begun to run. In our view, section 42–2–130(3) furthers a legitimate governmental purpose by penalizing drivers under denial, suspension, or revocation who commit additional traffic offenses. We conclude that the statute does not violate equal-protection guarantees. *See Dawson v. Public Employees' Retirement Association,* 664 P.2d 702 (Colo.1983); *Lujan v. Colorado State Board of Education,* 649 P.2d 1005 (Colo.1982); *Charnes v. Kiser,* 617 P.2d 1201 (Colo.1980); *Heninger v. Charnes,* 200 Colo. 194, 613 P.2d 884 (1980).

We have also reviewed Allen's arguments concerning Department Regulations 2–130.-3(F) and 2–123.11(B). We find them to be without merit.

The judgment of the district court is affirmed.