Thomas P. Looby Assistant Director Colorado Department of Health 4210 East Eleventh Avenue Denver, CO 80220
Dear Mr. Looby:
This opinion letter responds to your inquiry regarding the uses of moneys in the Hazardous Substances Response Fund ("HSRF").
QUESTIONS PRESENTED AND CONCLUSIONS
Your request for an Attorney General's opinion presents the following questions:
1. Whether moneys which have been appropriated by the General Assembly to the HSRF may be used for "necessary state activities at natural resource damage sites."?
Yes.
2. What activities are encompassed within the phrase "necessary state activities at natural resource damage sites."?
 Natural resource damage assessment activities undertaken at sites previously identified by the federal government on its National Priority List pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. secs. 9601-75 (1980 1987 Supp.) ("CERCLA").
ANALYSIS
Section 25-16-104.6(2), C.R.S. (1986 Supp.) sets forth the purposes for which funds appropriated by the General Assembly to the HSRF may be used. One such purpose is "[t]o implement the measures provided for in section 25-16-104.7," section 25-16-104.2(d), C.R.S. (1986 Supp.), which include, "necessary state activities at natural resource damage sites." Section25-16-104.7(1)(c), C.R.S. (1986 Supp.).
The phrase "necessary state activities at natural resource damage sites" is nowhere defined in title 25, article 16, of the Colorado Revised Statutes. Its meaning, however, may be discerned from the legislative intent evidenced in other relevant provisions of the Act, see, e.g., Allenv. Charnes, 674 P.2d 378, 381 n. 8 (Colo. 1984), including, of course, its caption. See Blanchard v.Griswold, 121 Colo. 29, 214 P.2d 362 (1949). Part 1 of article 16, title 25, C.R.S. (1986 Supp.) is captioned, "Cleanup," and the HSRF is expressly noted as having been created "to provide the necessary state share of the response costs of cleaning up such [CERCLA] sites." Section 25-16-101, C.R.S. (1986 Supp.). In my view, these provisions reveal a legislative intent to restrict the use of HSRF moneys to reactive measures taken in connection with any of those sites which have previously been identified by the federal government and placed upon its National Priority List. See 42 U.S.C. § 9605(8)(B).[1]
In my view, the reactive measures for which HSRF moneys may be used fall into two categories: (1) response activities,see 42 U.S.C. § 9601(23)(24)(25), 9604(a),9611(a)(1) and (2) natural resource damage assessments,see 42 U.S.C. § 9611(c)(1). Because the first type of activity is specifically authorized elsewhere, sections25-16-103, 104.6(2)(b), C.R.S. (1986 Supp.), I conclude that the phrase under consideration here refers to the second type of activity. This follows, in part, because the phrase appears as part of a section which explicitly addresses the use of HSRF moneys recovered as natural resource damage awards, section 25-16-104.7, C.R.S. (1986 Supp.), and in part, because such awards encompass the recovery of the costs of assessing damages to natural resources, 42 U.S.C. § 9607(a)(1)-(4)(C). The legislature obviously intended to authorize expenditures to assess damage to natural resources at National Priority List sites.
SUMMARY
"Necessary state activities at natural resource damage sites" encompass natural resource damage assessments at sites which the federal government has previously selected for inclusion on its National Priority List.
Sincerely,
 DUANE WOODARD Attorney General
PUBLIC FUNDS STATE AGENCIES STATUTES
Section 25-16-104.6, C.R.S. (1986 Supp.) Section 25-16-104.7, C.R.S. (1986 Supp.) Section 25-16-101, C.R.S. (1986 Supp.) Section 25-16-103, C.R.S. (1986 Supp.)
HEALTH, DEPT. OF Hazardous Solid Waste
HSRF moneys may be used for "necessary state activities at natural resource damage sites," i.e., assessing damages to natural resources at sites previously identified by the federal government on its National Priority List.
[1] The General Assembly has authorized the use of HSRF moneys "[t]o maintain an inventory of all sites and facilities at which hazardous substances have been disposed of in this state. . . ." Such authorization does not, in my view, encompass permission to initiate in depth investigations into whether particular sites or facilities pose a danger to the environment or to natural resources.
The obvious purpose of the "inventory" provision is to set up a repository of basic information for use by the federal government and the General Assembly. The federal government can investigate hazardous substance sites and determine whether they should be included on the National Priority List. 42 U.S.C. § 9604(b),9605(8)(B), 9611(c)(3). Obviously, if the General Assembly became dissatisfied with any inaction on the part of the federal government, it could statutorily adjust the purposes for which HSRF moneys may be used.