**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Sharon L. GARDNER, Defendant– Appellant.**

**No. 93CA1865.**

Colorado Court of Appeals, Div. III.

Nov. 24, 1995.

Rehearing Denied Dec. 28, 1995.

Certiorari Denied June 24, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Eric V. Field, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, State Public Defender, Anne Stockham, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge JONES.

Defendant, Sharon Lee Gardner, appeals a judgment entered on a jury verdict finding her guilty of retaliation against a witness and third degree assault. We affirm.

On November 5, 1992, the victim, while working at a computer console behind the pharmacy counter of a supermarket, was struck by a cardboard advertisement display, receiving small lacerations. Although neither the victim nor a nearby co-worker saw whether the cardboard display had been thrown or accidentally knocked over, both saw defendant on the other side of the counter immediately after the victim was struck by the display and both heard defendant call the victim a "slut."

Approximately 15 to 20 minutes later, the co-worker, with the victim's permission, listened in on a telephone conversation during which an anonymous caller told the victim: "You better watch over your shoulder, bitch. You made a bad enemy." Both the victim and the co-worker identified defendant as the anonymous caller.

Prior to this incident, the victim had testified in two trials in the prosecution and conviction of defendant's husband for two counts of fraud and deceit in attempting to pass false prescriptions.

### I.

Defendant first contends that her constitutional right to equal protection of the law was violated by an unreasonable statuto-

ry scheme under which she was charged. We disagree.

## A.

As an initial matter, we address the prosecution's argument that since defendant did not challenge the constitutionality of the statute until defendant's sentencing hearing was under way, she has waived appellate review of this issue. We disagree.

In *People v. Cagle,* 751 P.2d 614 (Colo. 1988), our supreme court held that, although appellate courts will not consider constitutional issues raised for the first time on appeal, when the constitutionality of a statute under which a defendant has been convicted is raised prior to sentencing, appellate review of the statute is appropriate.

Here, although the prosecution contends defendant did not attack the constitutionality of the statute until her sentencing hearing was in progress, the record reflects that more than a month prior to the sentencing hearing, she filed a motion attacking the constitutionality of the statute in question. Therefore, we conclude that appellate review of this issue is appropriate.

## B.

Defendant contends that the retaliation against a witness statute, § 18–8–706, C.R.S. (1995 Cum.Supp.), violates her constitutional right to equal protection of the law when it is analyzed in conjunction with the statute prohibiting intimidation of a witness, § 18–8–704, C.R.S. (1986 Repl.Vol. 8B). Defendant argues that conduct prohibited by § 18–8–706 is not significantly different from the actions proscribed by § 18–8–704 and that § 18–8–706 unreasonably provides for a more severe punishment than § 18–8–704, which, she alternatively claims, proscribes more serious conduct. We disagree with defendant.

■ The constitutional guarantee of equal protection of the law is included within the Due Process Clause of Art. II, § 25 of the Colorado Constitution. *Heninger v. Charnes,* 200 Colo. 194, 613 P.2d 884 (1980). Equal protection assures that those who are similarly situated will be afforded similar treatment. *People v. Mozee,* 723 P.2d 117 (Colo.1986).

■ While equal protection of the law requires statutory classifications of criminal behavior to be based on differences that are real in fact and reasonably related to the general purposes of criminal legislation, the General Assembly may prescribe more severe penalties for conduct it perceives to have more severe consequences, even if the differences are only a matter of degree. *People v. Jefferson,* 748 P.2d 1223 (Colo. 1988). However, statutes which impose different penalties for what ostensibly might be different conduct, but offer no intelligible standard for distinguishing the proscribed conduct, violate equal protection. *People v. Marcy,* 628 P.2d 69 (Colo.1981).

■ In order to withstand an equal protection challenge, a statutory classification must turn on reasonably intelligible standards and be sufficiently coherent and discrete so that persons of average intelligence could reasonably distinguish the conduct proscribed by different statutes. *People v. Marcy, supra.* Furthermore, harsher penalties for crimes committed under different circumstances and in violation of different statutes do not violate equal protection guarantees if the classification is rationally based upon the variety of evil proscribed. *People v. Montoya,* 196 Colo. 111, 582 P.2d 673 (1978).

■ Finally, a statute is presumed to be constitutional and a defendant challenging a statute must prove unconstitutionality beyond a reasonable doubt. *People v. Loomis,* 698 P.2d 1320 (Colo.1985).

Section 18–8–706, C.R.S. (1995 Cum.Supp.) proscribes retaliation against a witness or victim of a crime and states that:

An individual commits retaliation against a witness or victim if such person uses a threat, act of harassment, or act of harm or injury upon any person or property, which action is directed to or committed upon a witness or a victim to any crime, an individual whom the person believes has been or would have been called to testify as a witness or victim, a member of the witness' family, a member or the victim's family, an individual in close relationship to

the witness or victim, an individual residing in the same household with the witness or victim, as retaliation or retribution against such witness or victim.

The statute further provides that a violation is a class three felony.

Section 18–8–704, C.R.S. (1986 Repl.Vol. 8B) proscribes conduct which intimidates a witness or victim. It states:

(1) A person commits intimidating a witness or victim if, by use of a threat, act of harassment, or act of harm or injury to any person or property directed to or committed upon a witness or a victim to any crime, a person he believes has been or is to be called or who would have been called to testify as a witness or a victim, a member of the witness' family, a member of the victim's family, a person in close relationship to the witness or victim, a person residing in the same household with the witness or victim, or any person who has reported a crime or who may be called to testify as a witness to or victim of any crime, he intentionally attempts to or does:

(a) Influence the witness or victim to testify falsely or unlawfully withhold any testimony; or

(b) Induce the witness or victim to avoid legal process summoning him to testify; or

(c) Induce the witness or victim to absent himself from an official proceeding to which he has been legally summoned; or

(d) Inflict such harm or injury prior to such testimony or expected testimony.

A violation of this section is a class 4 felony.

### C.

■ Defendant argues that these two statutes violate her right to equal protection of the law in that there is no rational distinction between the statutes in the type of conduct which each prohibits. She maintains that the statutes employ much of the same language in regard to the type of behavior that is prohibited and the individuals who are protected. We disagree that the conduct proscribed in the two statutes is indistinguishable.

Although the retaliation statute uses much of the same language as the intimidation statute, defendant's contention that they are, therefore, indistinguishable as to the conduct they prohibit arises from a misreading of the statutes. Examination of the statutory scheme leads us to conclude that § 18–8–704, intimidating a witness or victim, applies only to instances of contact with a witness or victim prior to the witness' or victim's testimony. On the other hand, § 18–8–706 pertains to actions against a witness or victim after that person has testified.

Specifically, the quoted subsections of § 18–8–704 clearly proscribe conduct against persons described in the statute that takes place prior to any testimony. Once a witness or victim has testified, a defendant could not be charged with a violation of § 18–8–704 for conduct subsequent to that particular testimony. *See People v. Proctor,* 194 Colo. 172, 570 P.2d 540 (1977) (court held, in interpreting identical predecessor statute, that all that is necessary to show offense is proof of attempt to influence witness to withhold testimony at future time).

In contrast, the retaliation against a witness or victim statute, § 18–8–706, proscribes certain improper conduct taken against a witness or victim subsequent to the date the witness or victim testified or would have testified.

Hence, while the statutes may proscribe the same or similar conduct in relation to a witness or victim, they differ as to when the conduct is prohibited. Therefore, under the circumstances here, defendant could not be found to be in violation of both statutes for the same act and the statutes are factually distinguishable in their application.

### D.

■ Defendant also asserts that her rights to equal protection of the law were violated since the retaliation statute provides for a more severe punishment than the intimidation statute. Again, we disagree.

While defendant argues that there is a greater governmental interest in protecting a witness or victim prior to testimony, the People contend that there is a greater governmental interest in protecting a witness or a victim subsequent to testimony. Therefore,

the People argue, the more severe penalty for violating the retaliation statute is reasonably related to the general purposes for which the General Assembly promulgates criminal legislation.

In support of the more severe punishment for a violation of the retaliation statute, the People argue that the governmental interest in protecting the finality and integrity of verdicts from criminal interference and a greater deterrence of criminal interference subsequent to a conviction support the General Assembly's statutory scheme. Furthermore, the People argue that prior to or during a criminal trial, the defendant or those close to him or her would be less likely to interfere with a potential witness or victim and more likely to rely on the criminal justice system.

However, subsequent to a conviction, the defendant or those close to him or her may have less to lose from retaliation against a witness or victim and may be more inclined to be vindictive. Additionally, witnesses are likely to regard themselves as being under much less protective scrutiny when the case has been concluded and, therefore, more in harm's way than while the case and their testimony is pending.

Moreover, prior to testimony by a witness or victim, the defendant or those close to him or her may not know the extent to which a witness' or victim's testimony will incriminate the defendant.

In overview, these considerations identify a rational basis for imposing a greater penalty for retaliating against a witness and, thus, negate any claim of denial of equal protection.

We also note that the recently enacted retaliation against a juror statute, § 18–8–706.5, C.R.S. (1995 Cum.Supp.), is also a class 3 felony. The more severe punishment under this retaliation statute is indicative of the General Assembly's belief that conduct amounting to retaliation, and the negative impact of such conduct on society, is more serious and should be punished more severely than that related to intimidation.

We conclude that, since it is the General Assembly's prerogative to determine the rel-

ative seriousness of crimes and the appropriate sentences therefor, the statutes in question are factually distinguishable and reasonable grounds exist to support differences in punishment provided in each. Therefore, we perceive no basis for interfering with the General Assembly's treatment of the crimes at issue here.

## II.

■ Defendant next contends that the trial court erred in admitting testimony regarding a conversation between defendant and the victim prior to the assault. We disagree.

The evidence indicates that, in September, approximately one month prior to the alleged assault and just prior to the victim's testimony against defendant's husband, defendant initiated a conversation with the victim regarding her testimony. While both agree the conversation was polite and unobtrusive, they disagree as to the purpose of the conversation.

Defendant testified that she only intended to inform the victim that her husband was the person against whom the victim would be testifying, that the victim might only recognize defendant's husband from his visits to the store with defendant, and that she wanted the victim to be certain that defendant's husband was the perpetrator of the crime. In contrast, the victim testified that defendant asked her to say that she did not recognize defendant's husband and that he was not the person who had attempted to pass false prescriptions.

The trial court allowed testimony regarding the September incident for the limited purpose of showing motive and intent on the part of defendant.

Generally, evidence of prior acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. However, such evidence may be admissible for proof of, among other things, motive and intent. CRE 404(b).

■ For evidence of other wrongful acts of a defendant to be admissible under CRE

404(b), the evidence must (1) relate to a material fact; (2) be logically relevant; (3) have a logical relevance that is independent of the intermediate inference that the defendant has a bad character and acted in conformity therewith; and (4) have a probative value which is not substantially outweighed by its prejudicial effect. *People v. Spoto,* 795 P.2d 1314 (Colo.1990).

▮▮▮ The Colorado Rules of Evidence strongly favor the admission of material evidence and a trial court has substantial discretion in determining the admissibility of evidence. *People v. Quintana,* 882 P.2d 1366 (Colo.1994). Furthermore, absent an abuse of discretion regarding an evidentiary ruling, the trial court's decision will be affirmed. *People v. Ibarra,* 849 P.2d 33 (Colo.1993).

Upon review of the record, we conclude that the conversation at issue between the victim and defendant satisfies the *Spoto* test and that, therefore, the trial court did not abuse its discretion in admitting the evidence.

First, the trial court found, and we agree, that the September incident related to material facts of motive and intent on the part of defendant.

Secondly, the evidence regarding the September conversation was logically relevant to defendant's motive or intent in confronting the victim during the alleged assault.

Thirdly, the logical relevance of the September conversation is independent of the inference that defendant has a bad character and acted in conformity therewith. All the testimony from both the victim and defendant regarding the conversation described the incident as congenial and polite in nature. Very little, if any, of the conversation indicates that defendant was a person of bad character from which the jury could infer her guilt for the crime charged. Furthermore, the conversation tends to refute defendant's claim that she did not intend to confront the victim nor retaliate in any way when she encountered the victim on the day of the alleged assault.

Finally, the probative value of the prior conversation between the victim and defendant in the same setting as the alleged assault is not substantially outweighed by any danger of unfair prejudice which may result from the admission of the conversation which is, arguably, not even evidence of defendant's bad character. CRE 403.

### III.

▮▮▮ Defendant also contends that the trial court committed reversible error when it instructed the jury to consider her testimony concerning the September conversation between defendant and the victim for the limited purpose of motive or intent. We disagree.

Defendant does not challenge the use of the limiting instruction in reference to the victim's testimony, as it is in accordance with CRE 105 and *People v. Garner,* 806 P.2d 366 (Colo.1991). However, defendant argues that since the trial court orally gave the limiting instruction regarding the September conversation prior to defendant's testimony, the court improperly limited the use of defendant's testimony concerning the incident.

In addition, defendant urges that the trial court erred when it submitted a similar written limiting instruction to the jury which indicated that the victim's testimony concerning the conversation was admitted for a limited purpose but then, defendant argues, also indicated that all testimony regarding the September conversation was admitted for such limited purpose.

Even if we assume that it was error for the trial court to give the limiting instruction regarding the conversation prior to defendant's testimony, since such testimony from defendant would not necessarily be limited to only proving or disproving motive or intent, we conclude that any such error was harmless in light of the limiting instruction given to the jury prior to deliberation. This written instruction provided that the testimony given by the victim concerning the September conversation: "was admitted for a particular purpose only and for no other. The testimony you heard concerning September 28 was such evidence. It may be used as evidence for the purpose of showing motive and intent, you should consider it as evidence for no other purpose."

We disagree with defendant's contention that the second part of this instruction necessarily applied to defendant's testimony regarding the conversation and also instructed the jury to consider her testimony for such limited purpose. To the contrary, we conclude that the instruction is not only clear and unambiguous as to whose testimony was admitted for a limited purpose and to what extent, but also cured any confusion or improper oral instruction given to the jury prior to defendant's testimony regarding the incident.

However, even if we assume that these two instructions taken together fail to clarify that there was no limitation as to defendant's testimony, such error is harmless. The record reflects that neither the victim nor the witness actually saw defendant throw the display, and that the distance from the counter to the victim was not disputed. Furthermore, both the witness and the victim recognized defendant's voice over the phone. Thus, the real questions before the jury were: 1) whether defendant accidentally knocked the display into the victim or intentionally used it to harm the victim; and 2) if intentional, whether defendant assaulted the victim in retaliation for her earlier testimony.

The possible limitation as to how the jury could weigh defendant's testimony still focused properly on both critical issues. Thus, even if the giving of the instructions did lead the jury to consider the testimony for the limited purposes, it was harmless error as it did not enjoin the jurors to ignore the evidence on the critical issues before them.

Accordingly, the judgment of the trial court is affirmed.

RULAND and BRIGGS, JJ., concur.