**Ronald B. HEDSTROM,**
**Plaintiff-Appellant,**

v.

**MOTOR VEHICLE DIVISION, DEPARTMENT OF REVENUE, State of Colorado, Defendant-Appellee.**

No. 81SA373.

Supreme Court of Colorado,
En Banc.

April 25, 1983.

---

Tague & Beem, P.C., Anne M. Vitek, Denver, for plaintiff-appellant.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Mary C. Snow, Asst. Atty. Gen., James R. Willis, Sp. Asst. Atty. Gen., Denver, for defendant-appellee.

DUBOFSKY, Justice.

The appellant, Ronald Hedstrom, appeals an order of the Jefferson County district court dismissing his complaint and petition for judicial review of the revocation of his driver's license.[1] We affirm.

The Motor Vehicle Division of the Colorado Department of Revenue (the department) revoked Hedstrom's license on July 16, 1980, because he had been convicted of three traffic violations within the preceding seven years: driving while ability impaired on April 25, 1974 and July 10, 1978, and driving while under the influence of alcohol on January 21, 1980. Taken together, these offenses constituted a viola-

---

1. This case was transferred here from the Court of Appeals under sections 13–4–102(1)(b) and 13–4–110(1)(a), C.R.S.1973, because it involved constitutional questions.

tion both of section 42–2–123, C.R.S.1973 (accumulation of twelve points within any twelve consecutive months)[2] and section 42–2–202, C.R.S.1973, the habitual offender statute (three or more alcohol-related offenses within a seven-year period).[3] Hedstrom did not contest the validity of any of these convictions. The department imposed the mandatory five-year revocation of Hedstrom's driver's license specified by section 42–2–205, C.R.S.1973 on July 16, 1980.[4] As required by section 42–2–123, his license was suspended for a concurrent one-year period.[5] *See* section 42–2–124, C.R.S.1973.

Hedstrom filed a petition for review of the department's revocation and suspension orders in the Jefferson County district court. He alleged that the imposition of the harsher penalty under the habitual offender provisions denied him equal protection of the laws, and that the failure of the department to consider evidence of his alcoholism denied him due process. He also questioned the authority of the department to act because its director, Alan Charnes, did not take an oath of office until May 22,

1980. The district court affirmed the department's decision.

## I.

Hedstrom raises the same challenges in this appeal. He bases his equal protection attack on the amended versions of sections 42–2–122 and 42–2–205. These provisions set out the conditions under which the department must order the revocation of a driver's license. One whose license is revoked under the current version of sub-sections 42–2–122(1)(g) or (i), C.R.S.1973 (1982 Supp.) is eligible to obtain a probationary license upon the satisfactory completion of an approved alcohol treatment program. *See* section 42–2–122(4), C.R.S.1973 (1982 Supp.). An individual whose license is revoked under the habitual offender provisions, however, is not eligible for a probationary license. *See* section 42–2–205. Under the present statutory scheme, Hedstrom's traffic convictions would also constitute violations of sub-sections 42–2–122(1)(g) and (i);[6] thus, he argues that the

---

2. Section 42–2–123 provided, in part:
   (1)(a) The department has the authority to suspend the license of any driver who, in accordance with the schedule of points set forth in this section, has been convicted of traffic violations resulting in the accumulation of twelve points within any twelve consecutive months. . . .
   Driving while under the influence of alcohol is a twelve-point violation. Section 42–2–123(5)(b), C.R.S.1973.

3. Section 42–2–202 provided, in part:
   (2)(a) An habitual offender is one having, within such seven-year period or portion thereof, three or more convictions of any of the following separate and distinct offenses arising out of separate acts:
   (I) Operating a motor vehicle while under the influence of intoxicating liquor or drugs or while ability is impaired by the use of intoxicating liquor or drugs. . . .

4. Section 42–2–205 provided:
   (1) No license to operate motor vehicles in this state shall be issued to an habitual offender, nor shall an habitual offender operate a motor vehicle in this state:
   (a) For a period of five years from the date of the order of the department finding such person to be an habitual offender; and
   (b) Until such time as financial responsibility requirements are met.

5. The department had no discretion but to revoke Hedstrom's license for five years. *Fuhrer v. Department of Motor Vehicles,* 197 Colo. 325, 592 P.2d 402 (1979); *accord, Charnes v. Kiser,* 617 P.2d 1201, 1203, n. 2. Thus, Hedstrom's claim that the revocation under section 42–2–205 constituted an abuse of discretion is meritless.

6. Section 42–2–122(1)(g) and (i) provide:
   (1) The department shall forthwith revoke the license of any driver . . . upon receiving a record showing that such driver has:
   (g) Been convicted of driving a motor vehicle while under the influence of intoxicating liquor or any drug which made him incapable of safely operating a motor vehicle or while ability is impaired by the consumption of alcohol and has a previous conviction of any such offenses within the previous five years;
   . . .
   (i) Been convicted of driving a motor vehicle while under the influence of intoxicating liquor or any drug which made him incapable of safely operating a motor vehicle or while ability is impaired by the consumption of alcohol and has two previous convictions of any of such offenses. The license of any driver shall be revoked for an indefinite period and shall only be reissued upon proof to the department that said driver has complet-

differential availability of a probationary license denies him equal protection.

■ Because the amended versions of sub-sections 42–2–122(1)(g) and (i) do not apply retroactively to Hedstrom, he has no standing to challenge them. The law which we must interpret is that which was effective at the time the department's revocation order was entered. The general rule in civil proceedings regarding amendatory legislation is that civil liability already incurred may not be modified unless specifically provided by the legislature. Section 2–4–303, C.R.S.1973 (1980 Repl.Vol. 1B). *Noe v. Dolan,* 197 Colo. 32, 589 P.2d 483 (1979).

## II.

■ Hedstrom next argues that he was denied due process by the automatic revocation of his license under section 42–2–205 upon obtaining his third alcohol-related conviction within seven years. He contends that the hearing officer should have been required to consider his medical condition of alcoholism. We rejected this contention in another factual context in *Heninger v. Charnes,* 200 Colo. 194, 613 P.2d 884 (1980), where we said:

> The appellant's reformation, commendable though it be, is not a constitutionally significant fact that serves to exempt his prior convictions from the operation of the habitual traffic offender law. Upon satisfactory proof that the appellant had incurred the convictions necessary for habitual offender status, the Department properly revoked his driver's license. . . .

613 P.2d at 888. Under the statute, mitigating conditions are not relevant to the revocation decision.

## III.

■ Finally, Hedstrom contends that the failure of the executive director of the department to take an oath of office renders the license revocation null and void. The argument is totally specious. There is no allegation that any irregularities occurred in the revocation process as a result of this omission or that Hedstrom was in any way harmed.[7]

The district court correctly ruled that, with respect to executive officers, *Colo. Const.* Art. XII, § 8,[8] which requires an oath or affirmation before entering into the duties of office, applies only to those elected officials named in *Colo. Const.* Art. IV, § 1.[9] The executive director of the Department of Revenue, an appointed officer, is not among those listed. The Constitution and statutes are silent as to an oath requirement for officers such as the executive director. While the legislature has required that the executive director file a bond upon entering office, *see* section 24–35–104, C.R.S.1973 (1982 Repl.Vol. 10), it has not established an oath for that office.

Judgment affirmed.

---

ed a level II alcohol and drug education and treatment program certified by the division of alcohol and drug abuse pursuant to section 42–2–1202(5) and that said driver has demonstrated his knowledge of the laws and driving ability through the regular motor vehicle testing process. In no event shall such license be reissued in less than two years.

7. Moreover, we note that the director, Alan Charnes, took an oath of office on May 22, 1980—after Hedstrom had sustained his three traffic convictions but prior to the revocation of his license.

8. *Colo. Const.* Art. XII, § 8 provides:

**Oath of civil officers.** Every civil officer, except members of the general assembly and such inferior officers as may be by law exempted, shall, before he enters upon the duties of his office, take and subscribe an oath or affirmation to support the constitution of the United States and of the state of Colorado, and to faithfully perform the duties of the office upon which he shall be about to enter.

9. *Colo. Const.* Art. IV, § 1 provides in part: The executive department shall include the governor, lieutenant governor, secretary of state, state treasurer, and attorney general.