Lenord S. HORWITZ, D.P.M., Petitioner,

v.

COLORADO STATE BOARD OF MEDICAL EXAMINERS, and the People of the State of Colorado, ex rel. Duane Woodard, Attorney General, Respondents.

No. 84CA0541.

Colorado Court of Appeals, Div. I.

June 27, 1985.

Rehearing Denied Nov. 21, 1985.

Certiorari Denied (Horwitz) March 17, 1986.

---

Hochstadt, Straw & Strauss, P.C., Jordan Hochstadt, Richard S. Strauss, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Thomas J. Lyons, Asst. Atty. Gen., Denver, for respondents.

ENOCH, Chief Judge.

Petitioner, Lenord S. Horwitz, a podiatrist, appeals from an order of the State Board of Medical Examiners (Board) which placed his practice on one-year probation, subject to supervision and other requirements. We set aside in part and remand.

The Board is divided into two panels when conducting disciplinary proceedings. Section 12–36–118(1), C.R.S. (1984 Cum. Supp.). One panel is designated an "inquiry panel," the other a "hearings panel." Upon receipt of a written complaint, the inquiry panel investigates and determines whether there are sufficient grounds for a hearing. Section 12–36–118(4), C.R.S. (1984 Cum.Supp.). The hearings panel may then conduct an evidentiary hearing, or may appoint a hearing officer to conduct the hearing subject to its review. Section 12–36–118(1) and (5), C.R.S. (1984 Cum.Supp.). The hearing panel's report of its findings and conclusions, when approved and signed by a majority of the members of the panel who have conducted the hearing, becomes the action of the Board. Section 12–36–118(5)(g)(I), C.R.S. (1984 Cum.Supp.). When appropriate, the hearing panel is mandated to determine the extent of discipline within the statutory guidelines. Section 12–36–118(5)(g)(III), C.R.S. (1984 Cum. Supp.).

On July 15, 1983, petitioner and the Board entered into a stipulation which provided that two charges of unprofessional conduct which had been brought would be dismissed with prejudice in return for petitioner's agreement to complete 40 hours of continuing podiatric education in the area of surgery, to have his surgical practice supervised by an ambulatory foot surgeon, and to have his record-keeping supervised by a podiatrist. Dr. Albert, a podiatrist, was appointed to serve in both capacities.

On December 1, 1983, at a meeting with the inquiry panel to discuss scheduling difficulties, Dr. Albert was asked his opinion of petitioner's standard of care. He stated that in his opinion, because of poor technique and gross negligence, petitioner was a danger to the health, safety, and welfare of the public. After receiving these new charges, detailed in writing, the inquiry panel instructed the Attorney General to file a new complaint against petitioner, and on December 21, 1983, an order summarily suspending his license was entered.

A hearing was held before a hearing officer, and on February 6, 1984, the officer found two deviations from the standard of care: that X-rays were not available until surgery had virtually been started, and that a culture plate was left exposed to the air for one to three hours prior to incubation. Nevertheless, he recommended that petitioner's license be immediately reinstated, that no further discipline be imposed as a result of the charges, and that petitioner's supervision under the stipulation continue. Despite that recommendation, both the inquiry panel and the hearing panel denied petitioner's request to vacate the summary suspension.

Exceptions were filed to these findings, and after a hearing before the hearing

panel it entered its final order on May 1, 1984. The panel affirmed the hearing officer's factual findings but found that the weight of the evidence supported an additional finding that the procedure used to sterilize swabs did not render them sterile and, thus, failed to meet generally accepted standards of care. It was ordered that he should be granted probation on the condition that supervision of his practice by podiatrists be continued, and that he commit no acts or omissions that constitute substandard medical care during the probationary period. Further, the suspension of his license was to be lifted as soon as he found Board approved supervisors.

On May 3, 1984, this court ordered the Board to locate and approve, by May 11, 1984, a podiatrist or podiatrists to supervise the petitioner's practice and to specify the terms and conditions of the probation. On May 10, the Board issued a supplemental order which appointed four podiatrists as observers, and stated probationary conditions that included the completion of courses in surgery, anesthetics, and aseptic technique. After this order was issued, petitioner demonstrated to this court that these podiatrists were unwilling to serve. On July 20, 1984, the Board amended its supplemental order to include the names of four new observers, only one of which was a podiatrist. Following this Board action, we granted petitioner's motion for stay pending this appeal.

### I.

Petitioner first contends that the Board lacked jurisdiction to enter its orders because they were procedurally defective and violated his right to due process of law. He argues that the Board failed to follow the notice and hearing requirements of § 24-4-101 and §§ 12-32-101, et seq, C.R.S. (Colorado Podiatry Act), and §§ 12-36-101, et seq., C.R.S. (Colorado Medical Practices Act). We do not agree.

*Colorado State Board of Medical Examiners v. District Court*, 191 Colo. 158, 551 P.2d 194 (1976) specifically held that § 24-4-104(4), C.R.S., authorizes the Board to suspend summarily a license to practice medicine when it has reasonable grounds to believe that the public health, safety, or welfare is endangered, that emergency action is required, and the Board has incorporated such findings into its order. Furthermore, *Colorado State Board* rejected a due process argument similar to the one made by petitioner here.

■ The record supports the Board's determination that it had reasonable grounds to believe that emergency action was required. Although eventually most of the allegations were not proven, the Board was initially faced with the fact that 44 complaints had been lodged against petitioner by the Board-appointed supervisor. The Board's action was thus reasonably taken pursuant to its statutory authority under § 24-4-104(4), C.R.S., and that action is entitled to a presumption of validity and constitutionality which has not been overcome. *See Mitchell v. Charnes*, 656 P.2d 719 (Colo.App.1982).

Petitioner has cited to the court the recent case of *Cleveland Board of Education v. Loudermill*, 470 U.S. ——, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), as support for his contention that § 24-4-104(4), C.R.S., violates his due process rights. Contrary to his contention, the Supreme Court in *Loudermill*, and the cases cited therein, continues to recognize that emergency action in certain cases, such as we have here, where the public welfare and safety may be affected, is not a violation of one's due process rights. The decision in *Loudermill, supra*, in our view does not affect the holding of *Colorado State Board, supra*.

Petitioner argues alternatively that even if the Board had the authority to suspend his license summarily, it failed to follow required procedures in so doing, and erred in not lifting the suspension after the hearing officer's initial findings. We disagree.

In *Colorado State Board, supra*, the Supreme Court rejected a similar argument that in cases of summary suspension statutory notice and hearing is required. In

such cases the Board is required to provide the opportunity "for an ultimate judicial determination within a reasonably prompt time." *Colorado State Board, supra. See also Barry v. Barchi,* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979).

█ Here, petitioner concedes that the Board accorded him virtually an immediate hearing on the merits of the complaints. There is nothing in the record to indicate that the Board delayed its determination in any way, or that its final determinations were not reasonably prompt. *See Loudermill, supra.* Furthermore, because exceptions were filed to the hearing officer's initial findings, and because the findings explicitly stated that supervision of petitioner's practice should continue, and that the supervisor had resigned, it was not unreasonable, nor an abuse of discretion, for the Board to allow the suspension to continue.

## II.

Petitioner next contends that the Board's orders are tainted with an unlawful appearance of unfairness by its consultation with the "Conflicts Counsel" from the Attorney General's office, and with an allegedly biased Podiatry Board. We find no merit in these contentions.

█ The Attorney General's office is required to serve both as the Board's counsel, and to prosecute charges before hearing panels and provide representation in support of Board decisions. To avoid the appearance of impropriety and to maintain the integrity of the administrative process, the regulatory law section and conflicts counsel has been separated within the attorney general's office. *Cf. Osborn v. District Court,* 619 P.2d 41 (Colo.1980). Additionally, a Board's actions are entitled to a legal presumption of regularity and validity, *Mitchell, supra,* which petitioner did nothing to overcome. Furthermore, petitioner concedes that there is no reason to believe that conflicts counsel participated in the deliberations of the Board.

Nor is there evidence that petitioner was prejudiced in any way by the Board's mandatory consultation with the Podiatry Board. *See* § 12–32–104, C.R.S. A fair hearing had already been accorded him prior to any consultation, *see McGee v. State Board of Accountancy,* 169 Colo. 87, 453 P.2d 800 (1969), and, unlike his prior hearing, petitioner presented no evidence to demonstrate that the Podiatry Board was still biased against him. Thus, petitioner failed to overcome the presumption of regularity.

## III.

Petitioner also contends that the Board's orders are based on erroneous factual determinations, contrary to the weight of the evidence. We agree in part, but hold that any error is harmless.

█ The issue here concerns the Board's finding that petitioner did not properly sterilize swabs used in his practice, even though the hearing officer had found that the evidence did not support the complaint on this matter. This decision by the Board was erroneous because the hearing officer's contrary finding of evidentiary fact was supported by competent evidence. *See* § 24–4–105(15)(b), C.R.S. (1982 Repl.Vol. 10); *Lee v. State Board of Dental Examiners,* 654 P.2d 839 (Colo.1982).

█ The error is harmless, however, because the hearing officer found, and the Board affirmed, that petitioner had engaged in two deviations from the standard of care. Section 12–32–107(3)(i), C.R.S. (1984 Cum.Supp.) states that unprofessional conduct is defined as "two or more acts or omissions which fail to meet generally accepted standards of the practice of podiatry," and § 12–32–107(2), C.R.S., allows the Board to revoke or suspend the license to practice podiatry of one guilty of unprofessional conduct. Thus, an erroneous determination that the petitioner had participated in three acts which deviated from the standard of care, as opposed to two, does not affect the Board's ability to impose sanctions.

## IV.

Petitioner next contends that there is no reasonable relationship between the conditions of probation imposed by the Board in its supplemental order and the unprofessional conduct which it found had been committed. We agree in part.

■ Section 12–36–118(5)(g)(III), C.R.S. (1984 Cum.Supp.) provides that when the Board finds charges have been proven it may order a podiatrist to continue to practice under probation, and may include in such order the probationary conditions it deems appropriate to assure that petitioner practices in accordance with generally accepted professional standards. Here, it was established that petitioner had engaged in unprofessional conduct because of two deviations from the standard of care, § 12–32–107(3)(i), C.R.S., and it is thus not unreasonable for the Board to require continued observation. Section 12–36–118(5)(g)(III)(C), C.R.S., provides that one condition of probation may be "the review of supervision of his practice as may be necessary *to determine the quality of his practice* and to correct deficiencies therein." (emphasis added)

Although the Board has ordered the observation of areas of petitioner's practice which were not found substandard, the Board is empowered by its finding of unprofessional conduct to oversee petitioner's practice and determine the extent of such conduct. The Board has discretion in disciplinary matters, and we cannot say as a matter of law that it has abused its discretion here. *Cardamon v. State Board of Optometric Examiners,* 165 Colo. 520, 441 P.2d 25 (1968).

■ We agree, however, that the Board abused its discretion as a matter of law in requiring petitioner to complete courses in the area of surgery, anesthetics, and aseptic technique because there were no supportable findings from the hearing of substandard conduct in these areas. Section 12–36–118(5)(g)(III)(B), C.R.S. (1984 Cum. Supp.) states that as a probationary condition the Board may require one to take "such ... course of training or education

*as may be needed to correct deficiencies as may be found ... in the hearing."* (emphasis added) Hence, the language of this subsection requires that any courses instituted as a probationary condition must be for the purpose of correcting a specific deficiency found in the hearing.

Here, the Board did make a finding at the hearing that petitioner's aseptic procedures were substandard because of the evidence concerning the improperly sterilized swabs. However, we have held in part III of this opinion that this finding was in error. Thus, there is no valid finding to support the order of the educational requirements in aseptic techniques and procedures.

It was also an abuse of discretion for the Board to have required petitioner to complete a course in anesthetics and surgery as a probationary condition, because there were no findings of deficiencies as a result of the hearing concerning these procedures. This holding, however, does not affect petitioner's obligation to complete 40 hours of continuing podiatric education in the area of surgery, which was part of the 1983 stipulation. The stipulation specifically states that any future Board findings do not stay its requirements.

## V.

■ Petitioner contends that the Board's appointment in its amended supplemental order of observers who are not podiatrists is improper because the medical doctor and doctors of osteopathic medicine who will be observing and determining the quality of his practice will be unable to do so under the appropriate standard of care. We agree.

■ As previously stated, the Board is allowed to appoint observers to determine the quality of petitioner's practice to enable it to correct deficiencies therein. However, the quality of a medical practice is determined according to the standard of care used by those in the same field. *Connelly v. Kortz,* 689 P.2d 728 (Colo.App.1984). And, in general practitioners of one school

of medicine are not competent to testify as to the standards of care of another. *Caro v. Bumpus,* 30 Colo.App. 144, 491 P.2d 606 (1971). Thus, the standard of care is the degree of skill that is customarily observed by practitioners of podiatry, and not the standards of practice or methods of practices of other schools of medicine. *See Caro v. Bumpus, supra.*

We thus hold that the Board abused its discretion when it appointed two osteopathic doctors and a medical doctor to serve as observers for the petitioner's practice.

### VI.

 Petitioner's contention that the failure of Board members to take an oath of office renders its proceedings null and void is without merit. *See Hedstrom v. Motor Vehicle Division,* 662 P.2d 173 (Colo.1983).

Nor do we find that the Board's appointment of observers under its supplemental orders was the result of bad faith or was intended to harass or delay, and thus, we disagree with petitioner's contentions in this regard and deny his request for attorneys' fees. *See Mission Denver Co. v. Pierson,* 674 P.2d 363 (Colo.1984); C.A.R. 38(d).

The Board's order which conditioned the petitioner's probation upon the completion of courses in anesthetics, aseptics, and surgery is set aside. However, as previously stated, this holding does not affect petitioner's obligation to take courses in surgery as specified in the original stipulation of July 1983. In all other respects the order is affirmed. The cause is remanded to the Board for the limited purpose of appointment of observers who have been trained in the field of podiatry. Copies of the written order of appointment and acceptance by the observers shall be certified and forwarded immediately to this court. The court will then reconsider its stay order, which shall remain in effect until further order of court. In the event the certified copies have not been filed with the court within 30 days of this opinion, the Board shall, in writing, advise the court of the status of the proceedings.

PIERCE and BABCOCK, JJ., concur.