**Sharon P. BATH, Plaintiff-Appellee,**

v.

**COLORADO DEPARTMENT OF REVENUE, MOTOR VEHICLE DIVISION, Defendant-Appellant.**

**No. 86SA197.**

Supreme Court of Colorado, En Banc.

July 5, 1988.

Norman Thom, Colorado Springs, for plaintiff–appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Steven M. Bush, Asst. Atty. Gen., Denver, for defendant-appellant.

KIRSHBAUM, Justice.

The Motor Vehicle Division of the Colorado Department of Revenue (the Department) appeals a portion of an order of the El Paso County District Court declaring facially unconstitutional section 42–2–122.-1(6)(a), 17 C.R.S. (1984), which prohibits the Department from issuing probationary licenses to drivers who have had their licenses administratively revoked under section

42–2–122.1(1)(a)(I), 17 C.R.S. (1984).[1] We reverse.

## I

On January 12, 1985, Officer P. Newell of the Colorado Springs Police Department received a radio call to respond to the site of a one-car accident at a Colorado Springs address to assist a fellow officer. Upon his arrival, Officer Newell was advised by another officer that the driver of the vehicle, Sharon P. Bath (Bath), had been driving carelessly. When Officer Newell questioned Bath, he detected a strong odor of alcoholic beverage and noticed that she slurred her speech and that her eyes were bloodshot and watery. Bath failed to satisfactorily complete three roadside maneuvers and stated "you and I both know I'm drunk" and "I really did something wrong by drinking so much." Officer Newell then arrested Bath and obtained her consent to the administration of a chemical analysis of her blood.[2]

Officer Newell drove Bath to a Colorado Springs hospital, where blood was drawn within one hour after the accident. The resulting analysis reflected a ratio of 0.240 grams of alcohol per hundred milliliters of blood. Based on these results, a notice of revocation was mailed to Bath by the Department on February 5, 1985.

On April 3, 1985, a Department hearing officer conducted a revocation hearing to determine whether Bath had driven a motor vehicle in violation of section 42–2–122.-1, 17 C.R.S. (1984).[3] At the close of the

---

1. This appeal was originally filed in the Court of Appeals. This court later accepted jurisdiction pursuant to § 13–4–110(1)(a), 6A C.R.S. (1987).

2. Bath was subsequently charged with driving under the influence of alcohol, § 42–4–1202(1)(a), 17 C.R.S. (1984); careless driving, § 42–4–1204, 17 C.R.S. (1984); driving without proof of insurance, § 42–4–1213, 17 C.R.S. (1984); and driving with excessive alcohol content, § 42–4–1202(1.5), 17 C.R.S. (1984).

3. Section 42–2–122.1, 17 C.R.S. (1984), provides in pertinent part:

   **Revocation of license based on administrative determination.** (1)(a) The department shall revoke the license of any person upon its determination that the person:

   (I) Drove a vehicle in this state when the amount of alcohol in such person's blood was 0.15 or more grams of alcohol per hundred milliliters of blood or 0.15 or more grams of alcohol per two hundred ten liters of breath at the time of the commission of the alleged offense or within one hour thereafter, as shown by chemical analysis of such person's blood or breath; or

   (II) Refused to submit to a chemical analysis of his blood, breath, saliva, or urine as required by section 42–4–1202(3).

   . . . .

   (c)(I) Where a license is revoked under subsection (1)(a)(I) of this section and the person is also convicted on criminal charges arising out of the same occurrence for a violation of section 42–4–1202(1)(a) or (1.5), both the revocation under this section and any suspension, revocation, cancellation, or denial which results from such conviction shall be imposed, but the periods shall run concurrently, and the total period of revocation, suspension, cancellation, or denial shall not exceed the longer of the two periods.

   . . . .

   (6)(a) The periods of revocation specified by subsection (5) of this section are intended to be minimum periods of revocation for the described conduct. No license shall be restored under any circumstances and no probationary license shall be issued during the revocation period.

   (b) Upon the expiration of the period of revocation under this section, if the person's license is still suspended or revoked on other grounds, the person may seek a probationary license as authorized by sections 42–2–122(4) and 42–2–123(13) subject to the requirements of paragraph (c) of this subsection (6).

   . . . .

   (7)(c) The sole issue at the hearing shall be whether by a preponderance of the evidence the person drove a vehicle in this state when the amount of alcohol in such person's blood was 0.15 or more grams of alcohol per hundred milliliters of blood or 0.15 or more grams of alcohol per two hundred ten liters of breath at the time of the commission of the alleged offense, as shown by chemical analysis of such person's blood or breath, or refused to submit to a chemical analysis of his blood, breath, saliva, or urine as required by section 42–4–1202(3). If the presiding hearing officer finds the affirmative of the issue, the revocation order shall be sustained. If the presiding hearing officer finds the negative of the issue, the revocation order shall be rescinded.

   Section 42–2–123, 17 C.R.S. (1984), provides in pertinent part:

   **Authority to suspend license—to deny license—type of conviction—points.** (1)(a) The department has the authority to suspend the license of any driver who, in accordance with the schedule of points set forth in this section, has been convicted of traffic viola-

hearing the hearing officer found that Bath's blood alcohol content was 0.15 or more grams of alcohol per hundred milliliters of blood when she was operating her automobile on January 12 and, accordingly, revoked her driver's license for a period of one year. Bath then requested that she be issued a probationary license. The hearing officer denied the request, observing that section 42–2–122.1(6)(a), 17 C.R.S. (1984), prohibits the issuance of a probationary license to a driver whose license has been revoked pursuant to section 42–2–122.-1(1)(a)(I), 17 C.R.S. (1984).

Bath appealed this decision to the district court. She asserted, *inter alia*, that the portion of section 42–2–122.1(6)(a) prohibiting the issuance of a probationary license to drivers whose licenses are revoked pursuant to section 42–2–122.1(1)(a)(I) on its face violates guarantees of equal protection of the law under the fourteenth amendment of the United States Constitution and article II, section 25 of the Colorado Constitution. Bath pointed out that

tions resulting in the accumulation of twelve points within any twelve consecutive months or eighteen points within any twenty-four consecutive months, or, in the case of a provisional driver, who has accumulated eight points within any twelve consecutive months, or twelve points within any twenty-four consecutive months, or fourteen points within the time period for which the license was issued....

....

(4) Statutory provisions for cancellation and mandatory revocation of drivers' licenses shall take precedence over this section.

(5) Point system schedule:

**Type of conviction Points**

....

(b)(I) Driving while under the influence of intoxicating liquor or with an excessive alcoholic content pursuant to section 42–4–1202(1)(a) or (1.5).................12

....

(8.5)(a) Whenever the department receives notice that a person has pled guilty to, or been found guilty by a court or a jury of, a violation of section 42–4–1202(1)(a), (1)(c), or (1.5) and receives the license surrendered by such person to the court pursuant to section 42–2–123.3, the department shall forthwith suspend the license of such person for a period of not less than one year.

....

(11) If at the hearing held pursuant to subsection (8) of this section it appears that the record of the driver sustains suspension as provided in this section, the department shall immediately suspend such driver's license, and such license shall then be surrendered to the department. If at such hearing it appears that the record of the driver does not sustain suspension, the department shall not suspend such license and shall adjust his accumulated-point total accordingly. In the event that the driver's license is suspended, the department may issue a probationary license for a period not to exceed the period of suspension, which license may contain such restrictions as the department deems reasonable and necessary and which may thereafter be subject to can-

cellation as a result of any violation of the restrictions imposed therein. The department may also order any driver whose license is suspended to take a complete driving reexamination. After such hearing, the licensee may appeal the decision to the district court as provided in section 42–2–127.

....

(13)(a) If there is no other statutory reason for denial of a probationary license, any individual who has had his license suspended by the department because of, at least in part, a conviction for an offense specified in paragraph (b) of subsection (5) of this section may be entitled to a probationary license pursuant to subsection (11) of this section for the purpose of driving for reasons of employment, education, health, or alcohol and drug education or treatment; but such individual, if ordered by the court which convicted him, must be enrolled in a program of alcohol and drug traffic driving education or treatment certified by the division of alcohol and drug abuse in the department of health. Such a probationary license shall contain any other restrictions as the department deems reasonable and necessary, shall be subject to cancellation for violation of any such restrictions, including absences from alcohol and drug education or treatment sessions or failure to complete alcohol and drug education or treatment programs, and shall be issued for the entire period of suspension. No person shall be issued a second probationary license under this section within a five-year period.

(b) The department may refuse to issue a probationary license if the department finds that the driving record of the individual is such that he has sufficient points, in addition to those resulting from the conviction referred to in this subsection (13), to require the suspension or revocation of a license to drive on the highways of this state, or if the department finds from the record after a hearing conducted in accordance with subsection (11) of this section that aggravating circumstances exist to indicate the individual is unsafe for driving for any purpose. In refusing to issue a probationary license, the department shall

while she may not obtain a probationary license, a person convicted of driving in violation of section 42–4–1202(1.5), 17 C.R.S. (1984), and, therefore, subject to the provisions of section 42–2–123(13)(a), 17 C.R.S. (1984), requiring the Department to suspend a driver's license in certain circumstances, may obtain a probationary license.[4] The district court concluded, *inter alia,* that the challenged portion of section 42–2–122.1(6)(a) violated equal protection standards, but that the offending language could be severed from the remainder of the statute. The district court affirmed the revocation order and remanded the case to the Department for determination of whether Bath was entitled to receive a probationary license.

### II

The Department asserts that the district court erred in concluding that the provision in section 42–2–122.1(6)(a), 17 C.R.S. (1984), prohibiting the issuance of a probationary driver's license to drivers whose licenses are revoked under section 42–2–122.-1(1)(a)(I), 17 C.R.S. (1984), denies drivers such as Bath equal protection of law. We agree.

■ The equal protection guarantees of the United States and Colorado constitutions require like treatment of persons who are similarly situated.[5] *Clark v. Jeter,* —— U.S. ——, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988); *New York City Transp. Auth. v. Beazer,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979); *Tassian v. People,* 731 P.2d 672 (Colo.1987); *Board of County Comm'rs v. Flickinger,* 687 P.2d 975 (Colo.

1984); *People v. Marcy,* 628 P.2d 69 (Colo. 1981). In analyzing legislation challenged on equal protection grounds, a court must examine the purpose and effects of the statute and the nature of the right allegedly affected. Because equal protection of the law is denied only when a law has a "special impact on less than all the persons subject to its jurisdiction," *Board of County Comm'rs v. Flickinger,* 687 P.2d at 982 (quoting *New York City Transit Auth. v. Beazer,* 440 U.S. 568, 587–88, 99 S.Ct. 1355, 1366–67, 59 L.Ed.2d 587 (1979)), a threshold determination of whether persons allegedly subject to disparate treatment by governmental act are in fact similarly situated must be made in every equal protection case, *see In re C.B.,* 740 P.2d 11 (Colo. 1987); *Board of County Comm'rs v. Flickinger,* 687 P.2d at 982. If no such classification exists, the equal protection challenge must fail. *See, e.g., In re C.B.,* 740 P.2d at 17–18; *Board of County Comm'rs v. Flickinger,* 687 P.2d at 982; *Heninger v. Charnes,* 200 Colo. 194, 613 P.2d 884 (1980).

If such a classification does exist, the court must next determine what level of judicial scrutiny applies to the classification by examining the type of classification and the nature of the right affected. If a classification creates a suspect class [6] or interferes with the exercise of a fundamental right,[7] it is subject to strict judicial scrutiny and the government bears the burden of establishing that the classification is necessarily related to a compelling governmental interest. *See, e.g., San Antonio Indep. School Dist. v. Rodriguez,* 411 U.S. 1, 93

---

make specific findings of fact to support such refusal.

4. Bath did not assert that the imposition of the sanction of suspension rather than revocation constitutes an equal protection of the law violation, but rather assailed the fact that a probationary license was not available to persons found to have violated the provisions of section 42–2–122.1(1)(a)(I), 17 C.R.S. (1984).

5. The right to equal protection of the law finds support in the due process clause of the Colorado Constitution. Colo. Const. art. II, § 25. *E.g., DeScala v. Motor Vehicle Div.,* 667 P.2d 1360, 1363 n. 5 (Colo.1983); *Lujan v. Colorado State*

*Bd. of Educ.,* 649 P.2d 1005, 1014 (Colo.1982); *Heninger v. Charnes,* 200 Colo. 194, 197 n. 3, 613 P.2d 884, 886 n. 3 (1980).

6. A classification is "suspect" if it singles out religious, racial or other discrete and insular minorities. *See Tassian v. People,* 731 P.2d 672, 674 (Colo.1987); *Lujan v. Colorado State Bd. of Educ.,* 649 P.2d 1005, 1015, n. 8 (Colo.1982).

7. Fundamental rights are those rights which have been recognized as having a value essential to individual liberty in our society. *Austin v. Litvak,* 682 P.2d 41, 49 (Colo.1984); *Lujan v. Colorado State Bd. of Educ.,* 649 P.2d 1005, 1015, n. 7 (Colo.1982).

S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Tassian v. People*, 731 P.2d at 674; *Austin v. Litvak*, 682 P.2d 41 (Colo.1984); *Lujan v. Colorado State Bd. of Educ.*, 649 P.2d 1005 (Colo.1982); *Heninger v. Charnes*, 200 Colo. at 197, 613 P.2d at 887. Other legislative classifications, such as illegitimacy and gender, are subject to an intermediate level of judicial scrutiny requiring the government to establish a substantial relationship between the classification and an important governmental objective. *Clark v. Jeter*, 108 S.Ct. at 1910; *Pickett v. Brown*, 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983); *Kirchberg v. Feenstra*, 450 U.S. 455, 101 S.Ct. 1195, 67 L.Ed.2d 428 (1981); *Tassian v. People*, 731 P.2d at 674; *Austin v. Litvak*, 682 P.2d at 49; *R.McG. v. J.W.*, 200 Colo. 345, 615 P.2d 666 (1980).

A rational relationship standard of review is applied to legislative classifications not subject to strict or intermediate scrutiny. *Lying v. International Union*, ⎯ U.S. ⎯, 108 S.Ct. 1184, 99 L.Ed.2d 380 (1988); *Austin v. Litvak*, 682 P.2d at 49. Under this standard, the classification in question is presumed constitutional and the burden falls upon the challenging party to prove its unconstitutionality beyond a reasonable doubt. *Lying v. International Union*, 108 S.Ct. at 1184; *Yarbro v. Hilton Hotels Corp.*, 655 P.2d 822 (Colo.1982); *Lujan v. Colorado State Bd. of Educ.*, 649 P.2d at 1015; *Zaba v. Motor Vehicle Div.*, 183 Colo. 335, 516 P.2d 634 (1973).

■ While we have not been completely consistent in our articulation of the rational relationship standard, *see Austin v. Litvak*, 682 P.2d at 50, the contours of this test are well established. Initially, the classification must be reasonable rather than arbitrary, *Hurricane v. Kanover, Ltd.*, 651 P.2d 1218, 1222 (Colo.1982), or have some rational basis in fact, *People v. Velasquez*, 666 P.2d 567, 569 (Colo.1983), *appeal dismissed*, 465 U.S. 1001, 104 S.Ct. 989, 79 L.Ed.2d 223 (1984); *Smith v. Charnes*, 649 P.2d 1089, 1091 (Colo.1982); *see also Tassian v. People*, 731 P.2d at 675; *Dawson v. Public Employees' Retirement Ass'n*, 664 P.2d 702, 707 (Colo.1983). The classification must also bear a rational relationship to a legitimate state objective, *Hurricane v. Kanover, Ltd.*, 651 P.2d at 1222, or be reasonably related to a legitimate governmental interest, *Tassian v. People*, 731 P.2d at 675; *Smith v. Charnes*, 649 P.2d at 1091.

The district court applied the rational relationship test to sections 42–2–122.1(6)(a) and 42–2–123(13)(a), 17 C.R.S. (1984), apparently assuming that these provisions subjected similarly situated drivers to disparate treatment because a driver whose license is revoked under the former section cannot receive a probationary license while a driver whose license is suspended under section 42–2–123 may receive such a license. However, these sections deal primarily with different classes of drivers and provide different sanctions for different kinds of behavior.

Section 42–2–122.1 contains numerous administrative provisions uniformly applicable to all persons who possess Colorado driver's licenses. A law enforcement officer who arrests a person for driving a motor vehicle with a blood alcohol content of 0.15 or more grams of alcohol per hundred milliliters of blood or 0.15 or more grams of alcohol per two hundred ten liters of breath must forward to the Department a verified report of all information relevant to the administrative enforcement of license revocation under section 42–2–122.1, including a report of the results of any chemical tests which were conducted. § 42–2–122.1(2)(a), 17 C.R.S. (1984). If the chemical test reveals a blood alcohol content in excess of the statutory limit, the driver must be provided with a notice of revocation. § 42–2–122.1(3)(a), 17 C.R.S. (1984); § 42–2–122.1(4)(a), 17 C.R.S. (1984). If the chemical test results are available while the driver is in custody, the officer must serve the driver with the notice of revocation. § 42–2–122.1(4)(a). If the driver is not served with the notice of revocation by the officer, the Department mails the notice to the driver's last known address. § 42–2–122.1(3)(a) and (b), 17 C.R.S. (1984). The driver may file a written request for a hearing with the Department

within seven days of receipt of the notice. § 42–2–122.1(5)(a), 17 C.R.S. (1984).

The only issues at such an administrative hearing are whether the driver operated a motor vehicle in the State of Colorado when the amount of alcohol in the driver's blood at that time or within one hour thereof was 0.15 or more grams of alcohol per hundred milliliters of blood or 0.15 or more grams of alcohol per two hundred ten liters of breath, or whether the driver refused to submit to a chemical test.[8] § 42–2–122.1(8)(c), 17 C.R.S. (1984). If the Department finds by a preponderance of the evidence that either of these events occurred, the Department must revoke the driver's license. § 42–2–122.1(1)(a)(I); § 42–2–122.1(8)(c). A driver whose license is revoked under these provisions cannot receive a probationary license during the period in which his or her license is revoked. § 42–2–122.1(6)(a).

This elaborate administrative scheme with its single sanction is designed to protect the public from the danger of injury or death caused by persons who violate fundamental restrictions on the right to operate a motor vehicle. All persons found to have violated this provision receive the same treatment, regardless of what other sanctions they may face for violations of other statutory provisions resulting from the same conduct.

A person who operates a motor vehicle with a blood alcohol content of 0.15 or more grams of alcohol per hundred milliliters of blood or 0.15 or more grams of alcohol per two hundred ten liters of breath may also be prosecuted in a criminal proceeding pursuant to section 42–4–1202(1.5), 17 C.R.S. (1984). If convicted, the driver may be fined not less than $300 nor more than $1,000 and imprisoned in the county jail for not less than five days nor more than one

year. § 42–4–1202(4)(a)(I), 17 C.R.S. (1984). Conviction of this misdemeanor offense also results in the Department's administrative imposition of twelve traffic violation points against the driver's motor vehicle record. § 42–2–123(5)(b)(I), 17 C.R.S. (1984). Sections 42–2–123(1)(a) and 42–2–123(13) authorize the Department to suspend the license of any driver who has been convicted of traffic violations resulting in the accumulation of twelve points, as allocated by a schedule of points, within any twelve-month period of time and to grant a probationary license to such driver in some circumstances.

■ Bath seems to assert that because not all drivers who violate the provisions of section 42–2–122.1(1)(a)(I) actually have their licenses revoked, section 42–2–122.1(6)(a) is unconstitutional. It is true that some drivers may be subjected to criminal prosecution under section 42–4–1202(1.5) but not be subjected to administrative revocation under section 42–2–122.1.[9] It is also true that some drivers may be subjected to administrative revocation proceedings under section 42–2–122.1 but not be prosecuted under section 42–4–1202. Finally, some drivers may be subjected to both processes. A driver in this category may find his or her license revoked on the basis of the results of a chemical test under section 42–2–122.1(1)(a)(I) and also have his or her license suspended as the result of the assessment of twelve traffic violation points under section 42–2–123 after a conviction pursuant to section 42–4–1202(1.5). These factual anomalies do not, however, in any way support Bath's assertion that section 42–2–122.1(6)(a) violates equal protection standards on its face. They simply reveal that drivers are subject to both criminal and administrative procedures for violation of separate statutory prohibitions.

**8.** Sections 42–2–122.1(1)(a)(I) and 42–2–122.1(8)(c) were amended, effective July 1, 1987, to extend the permissible span of time before chemical testing to two hours after the commission of the alleged offense. Act effective July 1, 1987, ch. 315, § 1, 1987 Colo.Sess.Laws 1491.

**9.** For example, a driver who consents to the administration of a chemical test is not subject to administrative revocation under section 42–

2–122.1 unless the test is performed within a specified period of time after the commission of the alleged offense. § 42–2–122.1(1)(a)(I), 17 C.R.S. (1984). However, test results from chemical tests that are not performed within that time period may nevertheless be admitted into evidence and serve as a basis for the conviction of a driver in criminal proceedings filed pursuant to section 42–4–1202, 17 C.R.S. (1984).

Referring to our decision in *People v. Calvaresi*, 188 Colo. 277, 534 P.2d 316 (1975), Bath also asserts that the combination of these statutes violates her right to equal protection of the law because they in effect provide disparate treatment for identical conduct—operating a motor vehicle with a blood alcohol content of 0.15 or more grams of alcohol per hundred milliliters of blood or 0.15 or more grams of alcohol per two hundred ten liters of breath. The district court agreed that these statutes provided disparate treatment to similarly situated persons, and concluded that there was no rational basis for the distinction. We reject this analysis.

In *Calvaresi*, we held that the General Assembly may not provide disparate criminal penalties for a single criminal offense. The administrative provisions of sections 42–2–122.1 and 42–2–123 neither create a criminal offense nor impose a criminal sanction. Thus, the circumstances of this case are not comparable to the circumstances underlying the *Calvaresi* decision. Furthermore, the act giving rise to the administrative sanction of suspension under section 42–2–123 is the act of acquiring a prescribed number of traffic violation points within a certain time period. The fact that the act of driving under the circumstances delineated in section 42–4–1202(1.5) results in the imposition of twelve traffic violation points is merely incidental to the basis of classification adopted by the General Assembly in section 42–2–123.[10]

The three statutes in fact deal not with similarly situated persons but with three different classes of persons. The provisions of section 42–4–1202(1.5) apply to all operators of motor vehicles, whether validly licensed or not. The criminal penalties provided by that statute are significantly different from the administrative sanctions contained in sections 42–2–122.1 and 42–2–123. Bath does not suggest that the provisions of section 42–4–1202(1.5) violate equal protection guarantees.

The district court assumed, as does Bath, that sections 42–2–122.1 and 42–2–123 deal with identical groups of persons. It is true that both statutes apply to persons who have driven motor vehicles with excessive blood alcohol content. However, the administrative provisions of section 42–2–123 apply only to persons who have not only driven under such circumstance but who have also been adjudged guilty of such conduct as the result of criminal proceedings. Furthermore, the sanctions adopted by the General Assembly in section 42–2–123 apply to all persons who have accumulated excessive traffic violation points, regardless of the basis for the assessment of such points.

As the Department points out, section 42–2–122.1 itself makes no distinction as to classes of drivers. It applies to all licensed drivers, holds all licensed drivers to identical standards of conduct and is triggered in every instance by the arrest of any licensed driver for violating section 42–4–1202(1.5). We have previously rejected equal protection challenges to the mandatory revocation provisions of the predecessors of sections 42–2–122.1 and 42–2–123, concluding that such provisions were reasonably related to legitimate governmental interests. *Drake v. Colorado Dep't of Revenue*, 674 P.2d 359 (Colo.1984); *DeScala v. Motor Vehicle Div.*, 667 P.2d 1360 (Colo.1983); *Noe v. Dolan*, 197 Colo. 32, 589 P.2d 483 (1979). In our view, sections 42–2–122.1 and 42–2–123 do not deal with similarly situated persons. Therefore, the district court erred in declaring that under the rational relationship standard section 42–2–122.1(6)(a) violates equal protection guaran-

---

**10.** The General Assembly has expressly recognized the relationship between the provisions of §§ 42–2–122.1, 17 C.R.S. (1984), and 42–4–1202(1.5), 17 C.R.S. (1984). Pursuant to § 42–2–122.1(5)(c)(I), 17 C.R.S. (1984), any suspension or other sanction resulting from a conviction under § 42–4–1202(1.5) shall run concurrently with the revocation ordered by the Department after an administrative revocation hearing conducted pursuant to § 42–2–122.1.

Section 42–2–122.1(6)(a), 17 C.R.S. (1984), prohibits the issuance of a probationary license during any period of revocation. As the result of these provisions, a driver subject to both license suspension and license revocation may not obtain a probationary license and is, therefore, accorded the same treatment as a driver subjected only to administrative revocation pursuant to § 42–2–122.1.

tees of the United States and Colorado constitutions.

### III

For the foregoing reasons, the judgment of the district court, insofar as it declares that the provision of section 42–2–122.-1(6)(a) prohibiting the Department from issuing a probationary driver's license to a driver whose license has been revoked pursuant to section 42–2–122.1 violates constitutional guarantees of equal protection of the law, is reversed and the case is remanded to the district court with directions to reinstate the order of the hearing officer.