**Paul Scott HANCOCK,**
**Plaintiff–Appellant,**

v.

**STATE of Colorado, DEPARTMENT OF REVENUE, MOTOR VEHICLE DIVISION; and Steve Altman, a Hearing Officer Thereof, Defendants–Appellees.**

No. 86SA207.

Supreme Court of Colorado,
En Banc.

July 18, 1988.

French & Stone, P.C., David M. Haynes, Boulder, for plaintiff-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., David M. Kaye, Asst. Atty. Gen., Denver, for defendants-appellees.

KIRSHBAUM, Justice.

Paul Scott Hancock (Hancock) appeals a Boulder County District Court order affirming the decision of a Department of Revenue (Department) hearing officer to revoke Hancock's driver's license for a period of one year pursuant to section 42–2–122.1(1)(a)(I), 17 C.R.S. (1984). Hancock argues that the hearing officer committed numerous errors during the administrative hearing in ruling on the admissibility of evidence; that the revocation order is void because the hearing was not held at the proper location; that the revocation proceeding should have been dismissed because he was never arrested for violating section 42–4–1202(1.5), 17 C.R.S. (1984); and that section 42–2–122.1(1)(a)(I), 17 C.R.S. (1984), violates his rights to equal protection of the law and due process of law under the United States and Colorado constitutions. We affirm.

I

On September 20, 1984, Colorado State Patrol Officers Beckman and Torgeson, while sitting in a patrol car at a gasoline station in Boulder County, observed an automobile driven by Hancock come to an abrupt stop. Hancock left the vehicle and walked into the station. As he returned to his vehicle, he stumbled. Having witnessed this behavior, the patrolmen decided to follow Hancock.

After watching Hancock's car weave across the center line, make frequent lane changes and remain stopped at a four-way traffic stop for five seconds even though no other vehicles were in the area, the officers stopped Hancock's car. Upon contacting Hancock, Beckman detected an odor of alcoholic beverage on Hancock's breath and observed that his speech was slurred and that his eyes were bloodshot. Hancock lost his balance as he got out of his automobile and was unable to execute roadside sobriety tests satisfactorily. Beckman placed him under arrest pursuant to section 42–4–1202(1)(a), 17 C.R.S. (1984), for driving under the influence of alcohol. An analysis of blood drawn from Hancock thirty-one minutes after he was stopped revealed a blood alcohol content of 0.201 grams of alcohol per hundred milliliters of blood.

When he received a notice of revocation from the Department, Hancock requested an administrative hearing. The hearing was held on November 29, 1984, at the Department's Boulder office. The hearing officer found that Hancock had driven a motor vehicle with a blood alcohol content in excess of 0.15 grams of alcohol per hundred milliliters of blood and entered an order revoking his driver's license for one year, pursuant to section 42–2–122.1, 17 C.R.S. (1984).

Hancock sought timely judicial review of this decision, pursuant to section 42–2–122.-1(9)(a), 17 C.R.S. (1984); section 42–2–127(1), 17 C.R.S. (1984); section 24–4–106, 10 C.R.S. (1982) and C.R.C.P. 106(a)(4). On August 30, 1985, the district court affirmed the order of revocation. Hancock then filed an appeal of the district court's order in the Court of Appeals. This court subsequently accepted jurisdiction over the appeal pursuant to section 13–4–110(1)(a), 6A C.R.S. (1987).[1]

---

1. Section 13–4–110(1)(a), 6A C.R.S. (1987) provides:

When a party in interest alleges, or the court is of the opinion, that a case before the court of appeals is not properly within the jurisdiction of the court of appeals, the court of appeals shall refer the case to the supreme court. The supreme court shall decide the question of jurisdiction in a summary manner, and its determination shall be conclusive.

## II

Hancock contends that several evidentiary rulings of the hearing officer were erroneous. We find no reversible error.

### A

At the revocation hearing, Hancock's attorney attempted by cross-examination of Officer Beckman to elicit testimony about Hancock's performance of the roadside sobriety tests. He argued that such evidence was relevant to contradict the results of the chemical test. When pressed by the hearing officer to explain his position, the attorney replied:

> Obviously, if a person can substantially perform a significant number of the roadsides, then that would detract, that would render suspect the finding of the blood alcohol level, and the measure of the blood alcohol level.

The hearing officer concluded that evidence of Hancock's performance of the sobriety tests was not relevant to the issue of whether he had operated a motor vehicle with a blood alcohol content in excess of the statutory limit. In his appeal to the district court, Hancock asserted two additional grounds in support of his argument that the evidence should have been admitted: (1) that the evidence was relevant to the question of whether Beckman had probable cause to believe Hancock was driving while under the influence of or while ability impaired by alcohol at the time Beckman requested Hancock to submit to a chemical test; and (2) that Beckman opened the door to the admission of the evidence by testifying that Hancock had not performed the tests well.

■ Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Hancock points out that in crim-

inal proceedings alleging a violation of section 42–4–1202(1.5)(a), 17 C.R.S. (1984) (prohibiting the driving of a vehicle when the person's blood is 0.15 or more grams of alcohol per hundred milliliters of blood or two hundred ten liters of breath as shown by chemical analysis), the General Assembly has provided defendants with the following right:

> In any prosecution for a violation of this subsection (1.5), the defendant shall be entitled to offer direct and circumstantial evidence to show that there is a disparity between what the chemical test shows and other facts so that the trier of fact could infer that the test was in some way defective or inaccurate. Such evidence may include testimony of non-expert witnesses relating to the absence of any or all of the common symptoms or signs of intoxication for the purpose of impeachment of the accuracy of the chemical analysis of the person's blood or breath.

§ 42–4–1202(1.5)(b), 17 C.R.S. (1984).

Relying on section 42–4–1202(1.5)(b), Hancock suggests that the hearing officer erred in ruling that testimony respecting Hancock's performance on the roadside sobriety tests was not relevant to the accuracy of his chemical test results. However, Hancock made no offer of proof contradicting the testimony of officer Beckman and the observations contained in an alcohol influence report submitted by the officer to the Department indicating that Hancock did not perform the roadside sobriety tests adequately. Thus, even assuming that evidence of Hancock's performance on the roadside sobriety tests was relevant to the question of the accuracy of the chemical test results,[2] we conclude that any error in this ruling was harmless. *See* CRE 103(a); *People v. Snook*, 745 P.2d 647, 649 n. 5 (Colo.1987).

---

The Court of Appeals referred the appeal to this court because of the presence of issues questioning the constitutionality of statutes.

**2.** For example, if a driver had consumed one alcoholic beverage and then operated a motor vehicle one hour thereafter, a perfect perform-

ance on roadside sobriety tests might well be relevant to a challenge to the accuracy of a chemical test result indicating that the person possessed a blood alcohol content of 0.35 grams of alcohol per hundred milliliters of blood.

 District court review of an agency decision is limited to the record before it. *Stream v. Heckers,* 184 Colo. 149, 519 P.2d 336 (1974). Error may not be predicated on a ruling which admits or excludes evidence unless a substantial right of the party asserting error is affected and a timely, specific objection was made below. CRE 103(a)(1); *see Gray v. Lucas,* 677 F.2d 1086 (5th Cir.1982) (hearsay claim not considered on appeal because it was not raised before the trial court), *cert. denied,* 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 815 (1983); *People v. Watson,* 668 P.2d 965 (Colo.App. 1983) (failure to object in the trial court on the grounds asserted on appeal is deemed a waiver of the objection). Because Hancock failed at the hearing to assert his arguments that this evidence was relevant to the question of probable cause to arrest and that Beckman had opened the door to its admissibility, the district court correctly refused to consider those arguments on appeal. *People v. Watson,* 668 P.2d 965.

B

 Hancock asserts that the hearing officer erroneously ruled that an adequate foundation had been laid for the admission into evidence of the results of the analysis of the blood sample drawn from Hancock on September 20, 1984. He concedes that the foundation was sufficient under the standard articulated in *Miller v. Motor Vehicle Division,* 706 P.2d 10 (Colo.App. 1985). He argues, however, that *Miller* should be reexamined because it conflicts with *Aultman v. Motor Vehicle Division,* 706 P.2d 5 (Colo.App.1985). We disagree.

In *Miller,* the arresting officer testified during a revocation proceeding that he observed a registered nurse withdraw the driver's blood and that the police department sent that blood sample to a laboratory. The Court of Appeals held that this testimony, when coupled with the laboratory report and the arresting officer's police report, provided *prima facie* evidence that the chemical test was administered in compliance with the rules and regulations of the Department of Health and was sufficient to support the admission into evidence of the results of the analysis. In *Aultman,* the arresting officer testified that he personally administered a breath test to the driver on an intoxilyzer machine located in the police department, that he was certified by the Department of Health to operate the machine, and that he followed the Department of Health checklist in administering the breath test. The Court of Appeals held that this testimony, when coupled with the introduction of the checklist into evidence, provided *prima facie* evidence that the test satisfied the requirements of the rules and regulations of the Department of Health and that the breath test results were accurate, thus supporting the admission into evidence of those results.[3]

Both *Miller* and *Aultman* found under specific facts that an adequate foundation had been laid to permit the admission into evidence of the tests there involved. Neither decision purported to establish a formula for all cases involving either breath or blood analysis test results. In this case, Beckman testified that he observed a blood technician draw Hancock's blood sample and that he mailed the sample to Chematox Laboratory, Inc. The hearing officer took judicial notice of Chematox Laboratory, Inc.'s status as a Department of Health certified laboratory. The laboratory report admitted into evidence is signed by both Beckman and a representative of Chematox Laboratory, Inc. We find this evidence sufficient to establish a foundation for the admission into evidence of the laboratory report.

Hancock also asserts that *Miller* impermissibly shifts the burden of proof to drivers to establish noncompliance with Department of Health requirements. He con-

---

3. In *People v. Bowers,* 716 P.2d 471 (Colo.1986), this court held that intoxilyzer test results were admissible into evidence if the trial court was satisfied that the breath test was scientifically valid and reliable and was conducted by a qualified person using properly working testing de-

vices. In *Brewer v. Motor Vehicle Division,* 720 P.2d 564 (Colo.1986), we held that even a deficiency in the evidence of compliance with health department rules and regulations does not automatically render intoxilyzer results inadmissible.

cedes that the burden shifts only after the Department has made a *prima facie* showing of compliance, but argues that drivers are less able than the Department to secure the testimony of laboratory technicians at administrative hearings. Hancock does not, however, explain why the Department must be presumed to have greater access to information regarding the names of test administrators or better success at serving subpoenas than would drivers. Contrary to Hancock's argument, *Miller* simply requires the proponent of evidence of the results of the chemical analysis to establish a foundation for the admission of the reports of such analysis into evidence.

## C

In *Kirke v. Colorado Department of Revenue*, 724 P.2d 77 (Colo.App.1986), the Court of Appeals held that reliance on hearsay evidence in a driver's license revocation proceeding to establish an element of the alleged statutory violation denied the driver due process of law. Relying on that decision, Hancock contends that the revocation order here must be reversed because the only evidence of the alcohol content of his blood consisted of hearsay police and laboratory reports.

In *Colorado Department of Revenue v. Kirke*, 743 P.2d 16 (Colo.1987), this court reversed the Court of Appeals decision and held that the use of hearsay evidence to establish one of the elements in a license revocation proceeding does not violate due process guarantees so long as the hearsay evidence "is sufficiently reliable and trustworthy, and as long as the evidence possesses probative value commonly accepted by reasonable and prudent persons in the conduct of their affairs." *Kirke*, 743 P.2d at 21. At the hearing Hancock objected to the admissibility of the documents only on the grounds that they were incomplete and that he had not been served with a copy of the summons and complaint. Unlike the driver in *Kirke*, he did not object to the admission of the documents on the ground of hearsay.

■ Error may not be predicated on a ruling which admits or excludes evidence unless a substantial right of the party is affected and a timely, specific objection was made below. CRE 103(a)(1); *Gray v. Lucas*, 677 F.2d 1086 (5th Cir.1982) (hearsay claim not considered on appeal because it was not raised below), *cert. denied*, 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 815 (1983); *People v. Watson*, 668 P.2d 965 (Colo.App.1983) (failure to object in the trial court on the grounds asserted on appeal is deemed a waiver of the objection). Under these circumstances, Hancock's argument is not persuasive.

## III

■ Hancock argues that the the hearing officer's order is void because the revocation hearing was improperly held in Boulder, Colorado. We disagree.

Section 42–2–122.1(8)(a), 17 C.R.S. (1984), provides that an administrative revocation hearing "shall be held in the district office nearest to where the arrest occurred, unless the parties agree to a different location." At the beginning of the revocation hearing, Hancock orally moved to dismiss the proceeding on the ground that the Department's Boulder office was not a "district office" and that its Denver office, as the nearest "district office," was the proper venue for the revocation proceeding.

Hancock introduced no evidence to support his assertion, although Hancock's attorney stated that in a revocation proceeding involving another driver conducted during the preceding week the hearing officer indicated that the Boulder office was not a district office. In denying the motion, the hearing officer observed that Hancock was a resident of the Boulder area and was arrested in Boulder, that Beckman was assigned to the Boulder area, and that according to the Department's chief hearing officer the Boulder office was considered a satellite of the Denver office.

The hearing officer concluded that the Department's Boulder office reasonably conformed to the statutory requirement and that proceeding with the hearing in Boulder would not result in any substantial detriment to any of Hancock's interests.

In *McClellan v. State Department of Revenue*, 731 P.2d 769 (Colo.App.1986), the Court of Appeals considered and rejected a similar challenge to a revocation proceeding conducted in Boulder. Observing that the location of a revocation hearing is a matter of venue, not jurisdiction, the court stated that the Department's act in ordering the driver to appear at the Boulder office constituted an assertion by the Department that that office was a properly constituted district office. The court concluded that, in view of all the circumstances of the case, venue in Boulder was proper. In this case, as in *McClellan*, the Department's notice of hearing stated that the hearing was to be held in Boulder.[4] Hancock introduced no competent evidence to suggest that Boulder was not a district office for purposes of section 42-2-122.-1(8)(a); his attorney's reference to an earlier statement by the hearing officer that the Boulder office was not a district office did not constitute evidence, and was effectively refuted by the hearing officer's statement in this hearing that the Department regarded Boulder as a proper site for purposes of the statute. In these circumstances, we conclude that Hancock failed to establish that Boulder was not a proper venue for his revocation hearing.

### IV

■ Hancock contends that the Department has no authority to revoke his driver's license pursuant to section 42-2-122.-1(1)(a)(I), 17 C.R.S. (1984), because he was not charged with the misdemeanor offense of driving a motor vehicle with a blood alcohol of 0.15 grams or more of alcohol per hundred milliliters of blood or 0.15 grams or more of alcohol per two hundred ten liters of breath in violation of section 42-4-1202(1.5), 17 C.R.S. (1984).[5] In *Nefzger v. Department of Revenue*, 739 P.2d 224 (Colo.1987), this court held that the Department has the statutory authority to revoke a driver's license even though the driver may not have been charged with the related criminal offense of driving a motor vehicle in violation of section 42-4-1202(1.-5). We adhere to the views expressed in that opinion, and therefore reject Hancock's argument.

### V

Hancock argues that section 42-2-122.1, 17 C.R.S. (1984), violates his right to equal protection of the law and due process of law under the United States and Colorado constitutions. We disagree.

### A

Hancock contends that he was denied equal protection of the law as guaranteed under article II, section 25, of the Colorado Constitution because section 42-2-122.-1(1)(a)(I), 17 C.R.S. (1984), creates an arbitrary classification between drivers who have identical blood alcohol contents at the time of driving but who, due to differing rates of elimination and absorption of alcohol, have different blood alcohol contents at the time of testing. Hancock contends that such blood alcohol fluctuations would allow some drunk drivers to avoid having their driver's license revoked even though they operated a motor vehicle with the same blood alcohol content as drivers subject to revocation.

■ The equal protection guarantee of the Colorado Constitution requires like treatment of persons who are similarly situated.[6] *Bath v. Colorado Dep't of Reve-*

---

4. The notice stated in pertinent part as follows: "IT IS HEREBY ORDERED THAT YOU SHALL APPEAR IN PERSON AT THE DISTRICT OFFICE OF THE DEPARTMENT DRIVER LICENSE OFFICE 2850 IRIS AVE SUITE F BOULDER CO 80302...."

5. Hancock conceded that he was charged with violating section 42-4-1202(1), 17 C.R.S. (1984), but asserts that the Department is without authority to revoke his license pursuant to section 42-2-122.1(1)(a)(I), 17 C.R.S. (1984), because he

was not charged with violating section 42-4-1202(1.5), 17 C.R.S. (1984).

6. The right to equal protection of the law finds support in the due process clause of the Colorado Constitution. Colo. Const. art. II, § 25. *E.g., Bath v. Colorado Dep't of Revenue*, 758 P.2d 1381 (Colo.1988); *DeScala v. Motor Vehicle Div.*, 667 P.2d 1360, 1363 n. 5 (Colo.1983); *Lujan v. Colorado State Bd. of Educ.*, 649 P.2d 1005 (Colo.1982); *Heninger v. Charnes*, 200 Colo. 194, 613 P.2d 884 (1980).

*nue,* 758 P.2d 1381 (Colo.1988); *Tassian v. People,* 731 P.2d 672 (Colo.1987); *Board of County Comm'rs v. Flickinger,* 687 P.2d 975 (Colo.1984); *People v. Marcy,* 628 P.2d 69 (Colo.1981). In analyzing legislation challenged on equal protection grounds, a court must examine the purpose and effects of the statute and the nature of the right allegedly affected. Because equal protection of the law is denied only when a law has a "special impact on less than all the persons subject to its jurisdiction," *Board of County Comm'rs v. Flickinger,* 687 P.2d at 982 (quoting *New York City Transit Auth. v. Beazer,* 440 U.S. 568, 587–88, 99 S.Ct. 1355, ——, 59 L.Ed.2d 587 (1979)), a threshold determination of whether persons allegedly subject to disparate treatment by governmental act are in fact similarly situated must be made in every equal protection case, *Bath v. Colorado Dep't of Revenue,* 758 P.2d 1381 (Colo. 1988); *see In re C.B.,* 740 P.2d 11 (Colo. 1987); *Board of County Comm'rs v. Flickinger,* 687 P.2d at 982. If no such classification exists, the equal protection challenge must fail. *See, e.g., Bath v. Colorado Dep't of Revenue,* 758 P.2d 1381 (Colo. 1988); *In re C.B.,* 740 P.2d at 17–18; *Board of County Comm'rs v. Flickinger,* 687 P.2d at 982; *Heninger v. Charnes,* 200 Colo. 194, 613 P.2d 884 (1980).

 Section 42–2–122.1(1)(a)(I) requires the Department to revoke the license of any person found to have operated a motor vehicle with a blood alcohol content of 0.15 or more grams of alcohol per hundred milliliters of blood or 0.15 or more grams of alcohol per two hundred ten liters of breath at the time of the commission of the alleged offense or within one hour thereafter. The statute applies evenly to all who are found to possess the requisite alcohol content, as measured by blood or breath tests. *Bath v. Colorado Dep't of*

*Revenue,* 758 P.2d 1381 (Colo.1988). It does not single out a class composed of persons with certain physiological characteristics. Finally, Hancock has not presented evidence to support his arguments concerning the relative absorption rate of individuals subject to the statute.[7] For these reasons, we reject this argument.

**B**

 Hancock asserts that sections 42–2–122.1(1)(a)(I) and 42–2–123(11), 17 C.R.S. (1984), violate his right to equal protection of the law under article II, section 25, of the Colorado Constitution by prohibiting the issuance of a probationary license to him as a driver whose license is revoked under section 42–2–122.1(1)(a)(I) while permitting the issuance of a probationary license to a driver convicted of driving under the influence of or while ability impaired by alcohol under section 42–4–1202(1), 17 C.R.S. (1984). We disagree.

We recently addressed a similar argument in *Bath v. Colorado Department of Revenue,* 758 P.2d 1381 (Colo.1988). We pointed out in that opinion that drivers subject to revocation under section 42–2–122.1(1)(a)(I) who are ineligible for probationary licenses, and drivers subject to suspension under section 42–2–123(13), 17 C.R. S. (1984), who may under certain circumstances receive probationary licenses, are not similarly situated. Section 42–2–122.-1(1)(a)(I) applies to all licensed drivers. The conduct prohibited by that statute is operating a motor vehicle with a blood alcohol content of 0.15 or more grams of alcohol per hundred milliliters of blood or 0.15 or more grams of alcohol per two hundred ten liters of breath. In contrast, the conduct prohibited by sections 42–4–1202(1)(a) and 42–4–1202(1)(b), 17 C.R.S. (1984), which subjects drivers to sanctions under section

---

7. Critical to Hancock's argument is his assertion that due to different rates of absorption and elimination of alcohol, persons who are similarly situated at one point in time may possess a different blood alcohol content—either higher or lower—one hour later. As we noted in *Bath v. Colorado Department of Revenue,* 758 P.2d 1381 (Colo.1988), under the rational relationship standard, the standard which is applicable

to this type of challenge, the classification in question is presumed constitutional and the challenging party bears the burden of proving its unconstitutionality beyond a reasonable doubt. By failing to introduce any evidence to indicate the accuracy of his factual assertion regarding absorption and elimination rates, Hancock has failed to sustain his burden of proof.

42–2–123(11), 17 C.R.S. (1984), is operating a motor vehicle while under the influence of or while ability impaired by alcohol. The statutes impose different sanctions for different misconduct perpetrated by different drivers. Accordingly, they do not in combination or alone violate Hancock's right to equal protection of the law. *See Bath v. Colorado Dep't of Revenue*, 758 P.2d 1381 (Colo.1988); *Board of County Comm'rs v. Flickinger*, 687 P.2d 975 (Colo. 1984); *Heninger v. Charnes*, 200 Colo. 194, 613 P.2d 884 (1980).

## C

Hancock argues that section 42–2–122.1(1)(a)(I), 17 C.R.S. (1984), and section 42–2–122.1(8)(c), 17 C.R.S. (1984),[8] violate his rights to due process of law under the fifth and fourteenth amendments to the United States Constitution and article II, section 25, of the Colorado Constitution by creating an irrebuttable presumption that a driver's blood alcohol content is 0.15 grams of alcohol per hundred milliliters of blood or per two hundred ten liters of breath at the time of driving, if shown to be 0.15 or more grams of alcohol per hundred milliliters of blood or per two hundred ten liters of breath within one hour of the time of driving. We do not agree.

Section 42–2–122.1(1)(a)(I) states as follows:

**Revocation of license based on administrative determination.** (1)(a) The department shall revoke the license of any person upon its determination that the person:

(I) Drove a vehicle in this state when the amount of alcohol in such person's blood was 0.15 or more grams of alcohol per hundred milliliters of blood or 0.15 or more grams of alcohol per two hundred ten liters of breath at the time of the commission of the alleged offense or

within one hour thereafter, as shown by chemical analysis of such person's blood or breath....

§ 42–2–122.1(1)(a)(I), 17 C.R.S. (1984).

Section 42–2–122.1(8)(c) provides:

(c) The sole issue at the hearing shall be whether by a preponderance of the evidence the person drove a vehicle in this state when the amount of alcohol in such person's blood was 0.15 or more grams of alcohol per hundred milliliters of blood or 0.15 or more grams of alcohol per two hundred ten liters of breath at the time of the commission of the alleged offense, as shown by chemical analysis of such person's blood or breath, or refused to submit to a chemical analysis of his blood, breath, saliva, or urine as required by section 42–4–1202(3). If the presiding hearing officer finds the affirmative of the issue, the revocation order shall be sustained. If the presiding hearing officer finds the negative of the issue, the revocation order shall be rescinded.

§ 42–2–122.1(8)(c), 17 C.R.S. (1984).

Focusing on the language of section 42–2–122.1(8)(c), Hancock contends that his license could have been revoked only if the hearing officer found that he had a blood alcohol content in excess of the statutory limit at the time of the commission of the alleged offense. He reasons that because the hearing officer made a determination regarding his blood alcohol content only as to the time at which his blood was drawn, the hearing officer must have applied an irrebuttable presumption allegedly contained in section 42–2–122.1(1)(a)(I) to conclude that Hancock's blood alcohol content was in excess of the statutory limit at the time of the commission of the alleged offense.

This argument is based on the faulty premise that section 42–2–122.1(8)(c) de-

---

**8.** Section 42–2–122.1(8)(c), 17 C.R.S. (1984), was amended, effective July 1, 1987, to extend the permissible testing time span to two hours after the commission of the alleged offense. Act effective July 1, 1987, ch. 315, § 1, 1984 Colo.Sess. Laws 1491. Section 42–2–122.1 was repealed and reenacted with amendments effective July 1, 1988, to require, *inter alia,* revocation where a driver has operated a motor vehicle with a blood alcohol content of 0.10 or more grams of alcohol per hundred milliliters of blood or 0.10 or more grams of alcohol per two hundred ten liters of breath. Act effective July 1, 1988, S.B. 109, 1988 Colo.Sess.Reps. (to be codified at § 42–2–122.1).

fines prohibited conduct. As the Court of Appeals recognized in *Harvey v. Charnes*, 728 P.2d 373 (Colo.App.1986), the standard for revocation is set forth in section 42–2–122.1(1)(a)(I), and requires the Department to revoke a driver's license if it determines that person drove a vehicle with a blood alcohol content in excess of the statutory limit within one hour after the commission of the alleged offense. The court in *Harvey* properly concluded that the provisions of section 42–2–122.1(1)(a)(I) and section 42–2–122.1(8)(c) are not inconsistent simply because section 42–2–122.1(8)(c) does not include the "within one hour" language. The court also concluded that it is not necessary for the full standard to be set forth in every statutory section in order to permit the inference that, if the driver's blood alcohol content exceeded the statutory limit one hour after the offense, it also exceeded the limit at the time of the offense.

We find the reasoning of *Harvey* persuasive. Section 42–2–122.1(1)(a)(I) does not create any evidentiary presumption at all. It merely delineates proscribed conduct. It does not require a hearing officer to find that a driver operated a vehicle at a time when the driver's blood alcohol content exceeded the statutory limit merely because the driver had a blood alcohol content in excess of the statutory limit at some later point in time. In this case Hancock could have presented evidence to indicate that his blood alcohol content did not exceed the statutory limit at the relevant time, but chose not to. *See* § 42–2–122.1(8)(b), 17 C.R.S. (1984). Because section 42–2–122.1(1)(a)(I) does not contain an irrebuttable presumption, it does not implicate Hancock's due process rights under either the United States or the Colorado constitutions.

### D

Hancock also asserts that section 42–2–122.1(1)(a)(I), 17 C.R.S. (1984), fails to provide sufficient constitutional notice of the conduct which it prohibits and, therefore, violates constitutional guarantees of due process of law. He argues that a driver is incapable of calculating his specific blood alcohol content at the time he is driving and for a period of one hour thereafter, and thus has no way to gauge if he is violating the statute. We rejected identical arguments in *Smith v. Charnes*, 728 P.2d 1287 (Colo.1986), and again in *Nefzger v. Department of Revenue*, 739 P.2d 224 (Colo.1987). As we stated in *Smith v. Charnes*:

[T]here is an abundance of information available that illustrates the amount of different alcoholic beverages that an individual might consume before reaching a specific blood alcohol content level.... Considering the availability of such information and the fact that the consequences of statutes like section 42–2–122.1 can be avoided by the exercise of reasonable moderation, we conclude that section 42–2–122.1 provides sufficient notice of the conduct that has been determined to be unlawful to meet the requirements of due process.

*Smith v. Charnes*, 728 P.2d at 1291 (citation and footnote omitted). We adhere to the opinion expressed in *Smith* and in *Nefzger* and, therefore, reject Hancock's argument.

### VI

For the foregoing reasons, the judgment of the district court is affirmed.